Carr, J.
That no valid gift of a chattel can be made, without delivery of the thing given, or something equivalent to such delivery, is settled law, as this court decided in Ewing v. Ewing, upon the authority of many cases there cited. The question is, has there been such delivery here? In contracts of sale, a constructive or symbolical delivery is sufficient to pass the right to the chattel sold, and put it at the risque of the vendee : the cases cited in Pleasants v. Pendleton prove this. But lord Hardwicke, in Ward v. Turner, denies (as a general proposition) that such delivery is sufficient to render a gift valid. There are many things, of which actual, manual tradition cannot be made, either from their nature, or their situation at the time : it is not the intention of the law, to take from the owner the power of giving these : it merely requires that he shall do what, under the circumstances, will in reason, be considered equivalent to an actual delivery. Thus, in Jones v. Selby, A. called up two of his servants, and sent for his relative Mrs. W. who had been his housekeeper many years, and to whom he had by his will given £ 500. and said, in their presence, “ I give to my cousin Mrs. W. this hair trunk, and all that is contained in it•” and he delivered her the key thereof, and bid the servants take notice and remember it &,c. Three years after, A. made another will by which he gave Mrs. W. £ 1000. but took no notice of the gift of the trunk. He died scon afterwards; and four days after, upon opening the trunk in the presence of several persons, there was found in it several rings, pieces of gold, and among other things a tally upon the government for £ 500. This was considered a sufficient delivery of the tally, though the subsequent will was taken as a satisfaction. Upon this case, lord Hardwicke, in Ward v. Turner, comments thus: “The only case in which such a symbol seems to be held good, is Jones v. Selby, but I am of opinion, that amounted to the *336 same thing as delivery of possession of the tally, provided it was in the trunk at the time. Therefore, it was rightly compared to the cases upon 21 Jac. 1. Ryal v. Rowles [1 Atk. 165.] and others. It never was imagined on that statute, that the delivery of a mere symbol, in the name of the thing, would be sufficient to take it out of that statute: yet notwithstanding, delivery of the key of bulky goods, where wines &c. are, has been allowed as delivery of the possession, because it is the way of coming at the possession, or to make use of the thing: and therefore, the key is not a symbol, which would not do.” In Noble v. Smith, chief justice Kent says, “ The cases in which the delivery of a symbol has been held sufficient to perfect the gift, were those in which it was considered equivalent to actual delivery; as the key of a trunk, of a room, or of a warehouse, which was the true and effectual way of obtaining the use of the subject.” Upon these authorities, and the reason of the case, I am of opinion (though certainly not without doubts) that the delivery of the receipt, accompanying the gift of the bond, made it a valid gift. The bond itself could not be delivered : it was in court; in the custody of the law. The receipt was its representative. We must presume it described the bond accurately, and stated that it was received to be put in suit; and that when collected, the attorney would account for it. As in the case of the key, the delivery of this receipt, “ was the true and effectual way of obtaining the use of the subject.” Speaking from my own experience, I should say an attorney requires no better order for the payment of money he has collected on a bond, than the receipt he has given for the bond : when he takes this in, with a receipt upon it for the money, he feels himself safe. I think, therefore, the circuit court did not err in refusing to give the instruction to the jury asked by the appellant.
Cabell, J. concurred.
*337 Brooke, J. I think the circuit court was clearly right in refusing to give the instruction to the jury. A parol gift of a personal chattel, is distinguishable from a sale, in this, that until it is perfected by the delivery of the article or of some equivalent for it, the donor may retract the gift. The old common law on this subject, differed much from the rule of the civil law, which seems to have been adopted by the judges in England, from a pretty remote period. In Clayton 135. it was said, that if A. being at York gives a horse to J. S. he may have trespass for the horse: or, as is said 6 Bac. Abr. Trover. C. p. 683. if the person, in whom there is a general property'in goods which lie at York, give them to J. S. who is in London, and before he obtains possession of them, a stranger converts them, J. S. may have trover for them. But this doctrine has been long since changed, and the rule of the civil law preferred. By the common law, trover will not lie until the property is changed; and the decisions have settled, that a gift without delivery or some equivalent does not change the property. As long as the donor may retract the gift, the donee can have no action concerning it.
The gift, in the case before us, was proved to have been made by Mrs. Keen to the appellee; and the attorney’s receipt for the bond, the subject of the gift, then in suit, was delivered to the donee. This was as effectual as the delivery of the bond itself. The attorney was bound to respect his receipt: he could not have refused to pay the money collected on the bond, or to deliver the bond itself, if demanded, to the donee. In the case of Ward v. Turner, the doctrine is very fully examined by lord Hardwicke. That was the case of a donation causa mortis of receipts for South Sea stock, which was held invalid. His first objection was, that there was but one witness, whereas the civil law, from which the doctrine was taken, required five; but this he did not rely on. In conclusion, he said, that the gift there was merely legatory, and amounted to a nuncupative will, and contrary to the statute of frauds. He seems to admit the authority *338 of Selby v. Jones, where a tally for £ 500. was given by the delivery of the key of a trunk, in which it was found ; though he intimates, that lord Cowper went, in that case, on the ground of a satisfaction or ademption. This doctrine was examined by this court, in Ewing v. Ewing, where it is said that there is no distinction between gifts causa mortis and gifts inter vivos (like that now before us), except that in the former case, the gift does not take effect until the death of the donor, in the latter, it takes effect immediately.
Judgement affirmed.