# Staunton.

## W. B. SNIDOW, ADMINISTRATOR, v. HAYNES BROTHERTON, GUARDIAN.

### September 18, 1924.

1. GIFTS—*Gift Causa Mortis—Constructive Delivery—War Saving Stamps.*— A donor, a few hours before his death, gave his trunk key to the superintendent of his employer, telling him that if he died he wanted a child to have everything in the trunk.

   *Held:* That it could not be questioned that United States war savings stamps contained in the trunk passed to the donee.

2. BANKS AND BANKING—*General Deposits—Gifts—Delivery of Pass Book.*— A general deposit does not pass by the mere delivery of the pass book showing such deposit.

3. BANKS AND BANKING—*Gifts—Delivery of Pass Book—Savings Deposit.*— It appears to be well settled that a deposit, the ownership of which passes by the mere delivery of the book showing such deposit, will pass to the donee upon the actual or constructive delivery of the book.

4. BANKS AND BANKING—*Gifts—Savings Bank Deposit—Pass Book.*—Actual possession of the pass book of a savings deposit is an indication of ownership, and, under the contract evidenced by the rules of the savings bank the delivery of the book in question with intent to pass the title, and where the other requisites appeared, was an equitable assignment of the fund sufficient to constitute a gift *causa mortis* of the deposit thereby evidenced.

5. GIFTS—*Gift Causa Mortis—Bonds Deposited in Bank.*—The actual or constructive delivery of receipts for bonds deposited in a bank is equivalent to the delivery of the bonds themselves, and if the other requisites appear constitutes a valid gift *causa mortis* of the bonds.

Appeal from a decree of the Circuit Court of Giles county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Martin Williams* and *W. B. Snidow*, for the appellant.

*M. P. Farrier*, for the appellee.

Prentis, J., delivered the opinion of the court.

This suit involves the ownership of certain personal estate, formerly owned by W. H. Carter, deceased, now claimed both by his administrator and by the guardian of Anna Ross Brotherton, an infant, under an alleged gift by the decedent in expectation of death. The trial court adjudged the gift to be valid, and the administrator assigns error.

Carter, who was a laborer, having been fatally injured while at work (a tram car loaded with stone having run over him), was taken to a commissary building near by. While arrangements were being made to carry him to a hospital in Bluefield, W. Va., for treatment, he gave his trunk key to Pearman, to go to his room which was not far away to get some underclothes for him. Upon his return he gave the key to Bobbitt, superintendent of the corporation by which Carter was employed, who in turn delivered it to Carter, but Carter immediately handed it back to Bobbitt, telling him to keep it, and in substance that if he (Carter) died, he wanted Anna Ross Brotherton, the little daughter of Haynes Brotherton, to have everything he had; that in his trunk would be found his bank book, liberty bonds, receipts, papers and other things, all of which he wished her to have and requested Bobbitt to see that his wishes were carried into effect. All of which is corroborated by McGraw, vice-president and general manager of the company. Carter

died a few hours later at the hospital to which he was carried. He had no wife and had lived in the house with the father of the child, who was five years old, and had expressed his great affection for her. After his death it was found that he had on deposit in the savings department of the First National Bank of Pearisburg, $1,372.00, subject to certain rules and regulations printed in the book showing such deposit; that he owned $500.00 United States liberty bonds, and $240.00 in United States war savings stamps. This is the specific property involved.

The bank, which also had actual possession of the bonds for safe-keeping, for which it had given Carter its receipt, instituted suit, admitting its liability for the deposit as well as its obligation to return the bonds, and asked the court to determine whether the administrator or the guardian had title thereto.

Both the administrator and the guardian filed answers, asserting their respective claims, and the legal questions thus arising were submitted.

The answer of the guardian alleges that "the said W. B. Bobbitt delivered and turned over to this respondent, as such guardian, the said trunk and trunk key of the said William H. Carter in discharge of the trust imposed upon him by said Carter; that in said trunk the respondent found the savings account pass book which had been issued to the said William H. Carter by complainant, the said First National Bank of Pearisburg, and the receipts which had been issued to him by said bank for $500.00 of liberty bonds, which pass book and receipts are herewith filed as exhibits, said pass book being marked for identification exhibit 'A,' and said receipts, three in number, being marked exhibits 'B,' 'C' and 'D,' and this respondent also found in said trunk $240.00, face value, of United

States war savings certificates on three separate cards, two of which contain $100.00 each, and the other one $40.00, which cards or certificates are all of the series of 1918 and numbered "23292126," "23292127" and "23292128," respectively, and which are filed as exhibits herewith; that there was also in said trunk about $14.00 in cash, and some various articles of clothing, but nothing else of any value."

The answer of the administrator fairly raises the legal question which arises, assuming the facts alleged and relied on to be true.

[1-3] That the United States war savings stamps passed to the donee cannot be fairly questioned. As to the bank deposit, it is shown that it was not a general deposit subject to check. Such a general deposit does not pass by the mere delivery of the pass book showing such deposit.

In *Thomas' Adm'r* v. *Lewis*, 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848, the distinction between general deposits and savings bank deposits is noted. It appears to be well settled that a deposit, the ownership of which passes by the mere delivery of the book showing such deposit, will pass to the donee upon the actual or constructive delivery of the book. 12 R. C. L. 965; 20 Cyc. 1205, 1239.

[4] We find that this was a savings deposit, subject to certain rules and regulations, among others to these: "No withdrawal of deposits or interest shall be made unless the depositor's pass book be produced and the withdrawal entered therein. Provided, however, that if the depositor shall prove to the satisfaction of the officers of the bank that his pass book has been lost, stolen, or destroyed, and shall furnish to the bank satisfactory indemnity against any claim which may at any time be made against the bank on account

thereof, the officers of the bank may make payment to the depositor without the production of such book. * * The bank shall not be liable for payments made to any person who shall produce the deposit book of the depositor, unless notice shall have, previous to such payment, been given to the bank by or in behalf of the depositor that said book has been lost, mislaid, stolen or otherwise passed from the possession of the true owner thereof." The depositors who open a savings account are required to subscribe their names on the signature card of the bank, and the rules of the bank regulating savings deposits are printed in each pass book, "and the depositor shall agree by his signature on said cards to be governed by such rules as they shall then exist, or be thereafter modified as hereinafter provided, and to assent that his deposit shall be received under and subject to all the terms and conditions thereof. * * When any deposit account shall be closed the pass book, and all vouchers relating thereto, shall be returned to the bank."

Actual possession of this book then is an indication of ownership, and under the contract evidenced by these rules, the delivery of the book, with intent to pass the title, and where the other requisites appear, is an equitable assignment of the fund sufficient to constitute a gift *causa mortis* of the deposit thereby evidenced.

[5] As to the bonds held by the bank, the guardian produces the receipts of the bank showing its obligation to return a like amount of the same issue on demand upon the return of the receipts. It is contended for the administrator that the delivery of these receipts by the deceased donor to the donee is insufficient to pass the title.

The case of *Elam* v. *Keen,* 4 Leigh (31 Va.) 333, 26 Am. Dec. .322, is authority for overruling this contention. There the delivery of an attorney's receipt for a bond in his possession for collection is held to be equivalent to the delivery of the bond itself, and a valid gift *causa mortis.*

There is ample authority, ancient and modern, to support the judgment of the trial court. *Jones* v. *Selby,* Prec. in Chy. 300; 24 Eng. R. (Reprint) 143; *Noble* v. *Smith,* 2 Johns. (N. Y.) 52, 3 Am. Dec. 399; *Thomas's Adm'r* v. *Lewis (supra); Morrison's Ex'rs* v. *Grubb,* 23 Gratt. (64 Va.) 342; *Bank* v. *Holland,* 99 Va. 495, 39 S. E. 126, 55 L. R. A. 155, 86 Am. St. Rep. 898; *Johnson* v. *Colley,* 101 Va. 414, 44 S. E. 722, 99 Am. St. Rep. 884; *Shankle* v. *Spahr,* 121 Va. 598, 93 S. E. 605.

*Affirmed.*