# Wytheville.

ELIZA KNIGHT v. BENJAMIN W. MEARS, ADMINISTRATOR OF
JOHN KNIGHT, SR., AND OTHERS.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Topping & Topping,* for the appellant.

*Mears & Mears,* for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

The appellant, who is the widow of John Knight, Sr., deceased, filed her bill against the administrator, in which she alleged that the sum of $6,389.09, found on deposit in two banks to the credit of her husband, had been given to her by John Knight, Sr., some months before his death. The answer denied all of the substantial allegations of the bill. Testimony was taken and the trial court dismissed the bill.

There seems to be little question as to the rules of law governing such cases. The burden was upon the com-

plainant in the trial court to establish the gift by satisfactory testimony. There were conflicts in the testimony upon some material points, and the burden upon the appellant here is to satisfy this court that the decree of the trial court is erroneous.

John Knight, Sr., said to have been about eighty-four years old, died testate December 23, 1928. He left surviving him his widow, Eliza Knight, the appellant, and four illegitimate children, all of whom were acknowledged by him. He married Eliza Knight in 1903, and in 1915 executed his will and left it for safekeeping with Otho F. Mears, Esq., attorney at law, Eastville, Va., who drew it. After the execution of the will, John Knight told the appellant that when he died she should go to the office of Mr. Mears; that the papers were there, and that he had properly provided for her. This will, after the payment of his debts, gave her his entire estate for life, with remainder to be equally divided among his five children and his sister, if she should be living at the death of his widow. One of these five children and his sister died before the testator.

On December 29, 1928, about a week after the death of John Knight, the appellant went to the law office of Mears & Mears, successors to Otho F. Mears, who had been forced by deafness to retire from active practice, and made herself known to Benjamin W. Mears, the active member of the firm, and stated that her purpose was to find her husband's will. The will was found there, read and explained to her. She desired Benjamin W. Mears to qualify as administrator with the will annexed, and asked him to rent out her husband's land and see that her legal rights were protected.

These facts are uncontradicted, but there is a sharp conflict between Benjamin W. Mears and Eliza Knight, she testifying that she then and there showed him the pass books of the two banks, while he says she did not show him the pass books, and that he never saw them until the taking of the testimony in this case.

Fanny Nottingham, a colored nurse, who asserted a substantial bill against the estate, which was paid by the administrator, was also present at the interview, and she appears to sustain Eliza Knight's account of the interview. Mears testified that all that occurred was that he asked Eliza Knight what moneys the deceased, John Knight, had, and that when asked this question she looked around at Fanny Nottingham and then turned to Mears and said: "This money is as much mine as it was his. We both worked for it." This statement of Mears as to the reason then given by Eliza Knight for claiming the money—that they had both worked for it—was admitted by Eliza Knight on cross-examination.

Mears, as administrator, wrote to the two banks, asked for the amounts to the credit of John Knight, withdrew them therefrom and deposited the gross amount in another bank. Mears also testified that nothing further occurred with reference to the matter until March, 1929, when she mentioned the fact that he had given her the money only after he refused to pay nearly $400.00 for a tombstone for John Knight. He had several conferences with her, advanced her moneys on account of interest on funds, paid therefrom the expenses of administration, the debts of the estate, the largest of which appears to be $175.00 paid to Fanny Nottingham, nurse; and he heard nothing further of this contention until July when he paid her the rent for the farms.

This suit appears to have been brought to the first October rules following.

The testimony relied upon to support the gift of these two funds is given by the appellant, the nurse and Spady, the brother of appellant. It is, in substance, that on July 2, 1928, after John Spady had driven John Knight to one of the banks to draw some money, when he returned he gave these books to his wife, saying: "You take these books; they are yours. Take these books and take care of them; they are yours. You give

me a decent burial and give me a tombstone and you take the balance of the money and live off of it."

It is shown that the books for years had been kept in Eliza Knight's trunk, and that they were taken therefrom before this last trip to the bank and returned to the same place and custody immediately after the alleged gift.

One of these deposits, that in the Farmers and Merchants Trust Bank, Cape Charles, Va., while called a savings account, was a mere debit and credit account, bearing interest, but these funds were subject to check by the depositor, John Knight. As to this part of the fund in controversy then, it is perfectly well settled in this jurisdiction that the delivery of such a bank book to the donee is ineffectual as a gift *inter vivos*. The reasons therefor are sufficiently stated in *Thomas' Adm'r* v. *Lewis*, 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848; *Snidow* v. *Brotherton*, 140 Va. 187, 124 S. E. 182, 183, 40 A. L. R. 1246.

It is clear then that the appellant has no title to this deposit.

It seems to be equally well settled that the special class of deposits known as savings bank deposits, the ownership of which passes by the delivery of the book showing such deposit, may be the subject of a gift *inter vivos*, and that the ownership will pass upon the actual or constructive delivery of the book with intent to pass title to the donee. 12 R. C. L. 965; 20 Cyc. 1205, 1239.

The other deposit—that in the Townsend Banking Company—was a savings bank deposit, and so might have been given to Eliza Knight as an immediate gift during the lifetime of John Knight. If he delivered this book to her with intent to make her the sole owner of the deposit, the gift would be effective. It is also clear, however, that the burden of proving such a gift is upon the donee. Her conduct in connection with this alleged gift is a pertinent fact, however, which must be considered and given due weight in considering the testimony. While the gift is said to have been made nearly six months

before the death of John Knight, no notice was given the bank of any such change of ownership. More than six months thereafter, when the administrator claimed title to it, his title was recognized by the bank without question, and the funds transferred to his credit; and the evidence justifies the conclusion that the administrator was not notified of any such claim by Eliza Knight until twelve months after the alleged gift.

It is contended by the administrator in this case with great force that even admitting the truth of the testimony in support of this alleged gift, it is insufficient, and this from *Thomas* v. *Lewis, supra,* is quoted: "All gifts, whether *inter vivos* or *causa mortis,* are gifts *in praesenti.* There must be words of present gift as well as delivery. The one without the other is insufficient. Though there be actual delivery, yet if the words of gift accompanying the delivery indicate an intention on the part of the donor not to confer on the donee the power of taking physical possession of the thing until the donor's death, then the proceeding is an abortive testamentary act and not a gift." *Grace* v. *Virginia Trust Co.,* 150 Va. 56, 142 S. E. 378, 381, recognizes this as a sound expression of the law.

It is contended that the words of gift show that the donor only gave appellant the balance, after he was to be given a decent burial and a tombstone, and the donee herself testifies to her understanding of the matter in this language: "After his death I understood I would have to have an administrator to turn the money over to me, and I carried them to Mr. Mears." The fact that she said that she understood that she would have to have an administrator (if she understood the meaning of her language) negatives the idea that she also understood that there was an immediate and irrevocable gift to her which entitled her, without any other act on the part of John Knight, to take possession as owner of all of the funds in the bank.

It certainly cannot be questioned that because of the

great opportunity for fraud which is afforded such a claimant, an alleged gift *inter vivos* should never be upheld unless it is clearly and plainly established.

We are of opinion that in considering the evidence admitted for the appellant, her conduct at the time, her failure to assert the gift during the five months from the date of the alleged gift to the death of her husband, her failure to assert it to the administrator until six months after her husband's death, must also be considered, and that the court rightly concluded that she had not established a gift by that clear and cogent testimony which is required in such cases.

The decree will, therefore, be affirmed.

*Affirmed.*