# Richmond

## LOTTIE KING, EXECUTRIX, ETC. v. BLANCHE MERRYMAN, ADMINISTRATRIX, ETC.

March 7, 1955.

Record No. 4332.

Present, All the Justices.

The opinion states the case.

*James H. Raby*, for the appellant.

*John Barton Phillips* and *Henry B. Crockett*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Americus V. Dodson died on November 20, 1951, eighty-four years of age, leaving seven adult children surviving. For a period of more than two years prior to his death, he had been in an enfeebled condition, and required the help of his children from time to time. On November 9, 1951, when he had reached the condition where his children felt that they could no longer care for him, he was carried by ambulance from his home to a hospital where he remained until his death.

Dodson's wife died on May 5, 1949, at which time there was a joint savings account in their names in The First National Bank of Alexandria. On the 24th day of May, 1949, the decedent signed a writing addressed to the bank, reading as follows:

"You are hereby authorized and requested to change the savings account No. 533, now standing in my name as A. V. Dodson to a joint account of myself and daughter, said account to read A. V. Dodson or Mrs. Lottie King, and subject

to the check of either of us or the survivor." The account amounted to $1,642, and no checks were drawn on it prior to the death of Dodson.

On July 18, 1951, Dodson executed his last will and testament, leaving all of his property of every kind and description wheresoever situated to his seven children named therein, share and share alike. The appellant was named executrix and authorized to sell the real estate and divide the proceeds among his children.

The will was duly probated on November 30, 1951, and Lottie King, a non-resident, qualified as executrix, jointly with her sister, Blanche Merryman, as resident administratrix, with the will annexed. Subsequently, Lottie King filed an unsigned final account, in which she reported only the proceeds from the sale of the real estate of the deceased. Mrs. Merryman did not join in the report. Five of the children of the deceased, including Mrs. Merryman, filed exceptions to the account of the executrix on the ground that the latter had failed to account for the sum of $720, money which the deceased had in his home at the time he left to go to the hospital; and had likewise failed to account for the $1,642, which was on deposit in the bank, in the names of A. V. Dodson and Lottie King. They contended that Mrs. King had taken possession of the money left in the home, and that the deposit in the savings account was made in the joint names merely for the purpose of enabling Lottie King to draw on it as a matter of convenience for the benefit of Dodson while he was sick and enfeebled.

At the hearing before the Commissioner of Accounts, all of the children of the deceased testified. Mrs. King declared that on May 24, 1949, she went to the bank with her father when his savings account was transferred to their joint names, and he said to her at that time: "If anything happened to him the money would be mine." She said he was not then in an "infirm condition;" that, on November 9, 1951, he desired to go to a hospital to be taken care of "because he was too much for me to handle;" that he then gave her his bank book and

pocketbook, and said: "This is all yours." He said nothing to indicate how his hospital expenses were to be paid. She knew he had no other money or income, except a monthly retirement check of $60, which he used for ordinary living expenses; and that she was to pay the hospital expenses but expected to be repaid out of the money in his savings account. After the death of her father, Mrs. King had the bank transfer the account to her name.

Mrs. Murphy, sister of Mrs. King, said she was present when her father was taken to the hospital, saw him give his bank book to Mrs. King, and heard him say that "it was all hers." Later she testified that all she heard him say to her sister was "Here is the bank book." Her father had never told her about the money in the bank and she did not know anything about it, or the circumstances under which it was deposited.

Mrs. Webster testified that after her mother died, she went with Mrs. King "to the bank to have her name put on the book so that Daddy when he got so he couldn't get to the bank to get any money, she could draw it for him." She went to his house on the night before he went to the hospital and found him so ill that he hardly knew her or her brother, Wallace. After her father went to the hospital, she told Mrs. King she would help pay the hospital bills, and the latter replied: "No, Daddy has enough money to carry him a while yet."

Mrs. Catherine Tarsenko said that while she stayed at her father's home during February and March, 1951, she discussed his action with respect to changing the names in his savings account, and "He told me that the reason that was changed was in case there was nobody there and Lottie would be there, that was to be used only for the hospital or for doctor's bill, nothing else."

There was evidence which fully and conclusively showed that the deceased had a sum of money at his home at the time of his death, and that Mrs. King admitted, in the presence of all of his children at the time his will was read subsequent to his

death, that she had found $720 in cash among his effects. The admission was denied by appellant.

The Commissioner of Accounts sustained both of the exceptions to the report of the executrix, and directed that an account, executed by both the executrix and administratrix, c. t. a., should be submitted, in which the sums mentioned should be credited to the estate of the deceased.

Mrs. King excepted to the findings of the Commissioner, and her exceptions came on to be heard before the Circuit Court. The Court, being of the opinion that the evidence and the law fully supported the findings of fact and the conclusions of law of the Commissioner, ratified and confirmed it in all respects. The appellant duly noted her exceptions and perfected this appeal from that order.

Appellant in her brief assigns three grounds of error to the ruling of the court. She contends (1) that the court erred in failing to hold, as a matter of law, that the ownership of the funds in the bank savings account passed to her as the survivor on the death of her father by virtue of the form of the deposit; (2) that the court erred in failing to hold, as a matter of law, that the evidence plainly showed that the deceased made her a gift causa mortis of the bank account; and (3) that there was no evidence to show that she found $720 belonging to the deceased in his home after his death.

In view of the overwhelming evidence that Mrs. King had found and taken possession of at least $720 of the funds of the deceased, counsel for appellant abandoned the assignment of error relating to these funds when the case was argued before us.

In support of her first assignment of error, appellant relies on § 6-55 of the Code of Virginia, and the case of *Deal's Administrator* v. *Merchants and Mechanics Savings Bank*, 120 Va. 297, 91 S. E. 135, L. R. A. 1917 C, 548, decided in 1917.

The question whether the funds in a joint savings bank account with a survivorship clause belong to the survivor on the death of one of the parties has been the subject of much legislation and litigation in all of the States. We are told that

every State, except Kentucky, has enacted statutes regulating the payment of joint accounts opened in the name of two or more persons. It is not controverted that such statutes, usually found in banking codes, were originally adopted for the protection of the bank, so that it could make payment to the survivor of the joint account without being liable to the estate of the deceased depositor. Later, when cases arose involving the rights of the depositors as between themselves, some of the States enacted statutes to provide conclusive or rebuttable presumptions as to such rights. For more than half a century, the courts of this country have struggled to discover whether a joint deposit bank account with an extended right of survivorship, sometimes called a "poor man's will," is a gift, a trust, a contract, or joint tenancy, or a testamentary disposition.

Exhaustive annotations on the subject of "Gift or trust by deposit of funds belonging to depositor in a bank account in the name of himself and another," are contained in 48 A. L. R. 189; 66 A. L. R. 881; 103 A. L. R. 1140; 135 A. L. R. 993; and 149 A. L. R. 879. See also Michie on Banks and Banking, Volume 5 A, Permanent Edition, chapter 9, § 46; 7 Am. Jur., Banks, page 300, § 426, *et seq.*; 9 C. J. S., Banks and Banking, page 595, § 286.

In this case, it must be remembered that the savings fund account in question originally belonged to the deceased, and if the survivor of the joint account is entitled to it, it must have passed somehow to her from the deceased. The appellant makes no claim of a valid consideration for the transfer. As the survivor, she first bases her title upon the statute in view of the form of the deposit. Secondly, she claims the fund as a gift. Her contentions will be considered in that order.

■ The deposit on May 24, 1949, in accordance with instructions of the deceased, was made in statutory form. It expressly authorized the bank to credit the funds to the joint account of himself and daughter, and that it be made "subject to the check of either of us or the survivor." That is all

the deceased requested of the bank. His written instruction merely directed that either of the depositors or the survivor should be allowed to withdraw funds in the account. It does not contain language from which a presumption of an intention to create a joint tenancy, with the incident right of survivorship, might flow. It does not contain any language showing that it was his intention or understanding that his daughter should take title to the fund or any portion thereof at his death.

Virginia Code, § 6-55 is similar to statutes on the same subject in many of the States. It is contained in our Code in the chapter entitled "Banking and Finance," and reads as follows:

"§ 6-55. Deposits in names of two or more persons, or survivors; how discharged.—When a deposit has been made, or shall hereafter be made, in any bank or trust company transacting business in this State, under the names of two or more persons, payable to either, or payable to the survivor or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of such persons, whether the other or others be living or not, and the receipt or acquittance of the person so paid shall be a valid, sufficient and complete release and discharge of the bank or trust company for any payment so made. The term 'deposit' shall include certificates of deposit, heretofore and hereafter issued." The last sentence was added by an amendment in 1954, Acts 1954, chapter 11.

The statute was first enacted in 1912, entitled "An Act relative to payment and custody of deposits in two or more names." Acts 1912, chapter 299, Pollard's Code, Biennial, 1912, Supplement Part 4, page 348. With slight changes, it remains substantially the same at the present time. It establishes no presumption as to the ownership of the money as between two persons named in a joint savings account, with or without an extended right of survivorship. It is manifestly for the protection of the bank and not declaratory of the rights of the depositors in the fund as between themselves.

Each depositor is merely given the right to receive payment out of the funds from the bank during his lifetime, and the survivor the right after the death of the other person. The bank is discharged from liability for any payment so made.

█ In the absence of a statutory provision establishing the rights of the depositors between themselves, it is generally held that questions presented as to the ownership of the fund must be determined in the light of common law principles under the circumstances attending the deposit. In that determination, the intention of the depositor is a primary and controlling factor. 7 Am. Jur., Banks, § 426, page 300; 9 C. J. S., Banks and Banking, § 286, page 595.

In *Deal's Administrator* v. *Merchants and Mechanics Savings Bank, supra,* it appeared that Mrs. Deal "sent for a friend and requested him to deposit her money in bank, saying she did not expect to live long and wanted the money to go to her sister, Ellen C. Holland, when she died. The friend told her that he could deposit the money in her name, so that it would go to her sister at her death, and that it should be put in the bank book that way. In pursuance of this understanding," the money was deposited in the bank "on savings account, to the credit of 'Martha S. Deal or Ellen C. Holland.' At the time the deposit was made, the receiving teller of the bank explained that the deposit was a joint account, and that either of the parties named could draw the same at any time; but that it was necessary to bring the pass book to the bank."

The court, in commenting on the facts, said:

"That this joint deposit was made with the understanding that the balance thereof, not checked out during the joint lives of the two depositors, was to become the property of the survivor satisfactorily appears.

"We are of opinion that, under the facts of this case, the effect of the deposit by Mrs. Deal to the joint credit of herself and her sister was to create a contract relation between the bank and the two joint depositors, under which the amount to the credit of the account became the property of Ellen C. Holland as the survivor of decedent and herself.

\*     \*     \*     \*     \*     \*     \*

"Therefore, when the deposit in this case was made by Mrs. Deal for the joint benefit of herself and Mrs. Holland, in legal effect a loan was made by decedent and Mrs. Holland to the bank, and the bank was the debtor to them, and they creditors of the bank, to the amount of such deposit. It was a pure contractual relation and no question of gift or trust arises in determining the rights of the parties under such a contract."

The court relied upon *Chippendale* v. *North Adams Savings Bank*, (1916) 222 Mass. 499, 111 N. E. 371, in which similar language was used. After the decision in the *Chippendale* case, *supra*, the Massachusetts court in several later cases modified its views, holding that in order to vest the survivor with the ownership of the account there must be shown an intention to make a gift, and that when such intention is established the gift is effected through the instrumentality of the contract between the bank and the depositors. *Bradford* v. *Eastman*, (1918) 229 Mass. 499, 118 N. E. 879; *Battles* v. *Millbury Sav. Bank*, (1924) 250 Mass. 180, 145 N. E. 55; *Goldston* v. *Randolph*, (1936) 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117; *Buckley* v. *Buckley*, (1938) 301 Mass. 530, 17 N. E. (2d) 887; and *Castle* v. *Wightman*, (1939) 303 Mass. 74, 20 N. E. (2d) 436.

In *Goldston* v. *Randolph*, *supra* it was "made clear that the transaction rests for its efficacy upon the intention to make a gift." Note 11, 7 Am. Jur., Banks, page 308.

The courts of several States have upheld the right of a codepositor on the theory that under the contract between the depositors and the bank, the codepositor is entitled to the deposit on the death of the original depositor. *Matthew* v. *Moncrief*, (1943) 77 App. D. C. 221, 135 Fed. (2d) 645, 149 A. L. R. 856; *Re Winkler*, (1942) 232 Iowa 930, 5 N. W. (2d) 153; *Bennett* v. *Bennett*, (1942) 70 Ohio App. 187, 45 N. E. (2d) 614.

In other States the right of a codepositor to the balance remaining on deposit after the death of the depositor, on the theory that under the contract between them and the bank, the balance should pass to the survivor, has been denied. *Cerny* v. *Cerny*, (1943) 152 Fla. 333, 11 So. (2d) 777; *Northcott* v. *Livingood*, La. App. 1942, 10 So. (2d) 401.

See also *Green* v. *Comer*, (1943) 193 Okla. 133, 141 P. (2d) 258; and *Steiner* v. *Fecycz*, (1942) 72 Ohio App. 18, 50 N. E. (2d) 617, for discussions of the contract theory as applied to joint bank accounts.

In the recent case of *Murray* v. *Gadsden*, (1952) 91 App. D. C. 38, 197 F. (2d) 194, 33 A. L. R. (2d) 554, the evidence showed that Emma G. Murray signed an instrument declaring her savings account in a building and loan association to be thereafter a joint account in the name of herself and her sister, Vellmar G. Gadsden, "subject to order of either, and the balance at death to the survivor." Upon the death of Mrs. Murray, her sister claimed the balance in the account on the ground that there was an understanding that the sister would share the money with other sisters. The court said, under the principles established by the decisions of the Maryland Court of Appeals, that any interest of Mrs. Gadsden arising upon the death of the depositor was precluded by failure to comply with the statute on wills; that an immediate effective interest was not created by contract or by trust; that the parol evidence rule did not forbid inquiry into the object of the depositor in executing the writing directing the joint account; and that the evidence showed that the arrangement had been made merely for the convenience of the depositor.

See *Whalen* v. *Milholland*, (1899) 89 Md. 199, 43 A. 45, 44 L. R. A. 208; and *Coburn* v. *Shilling*, (1921) 138 Md. 177, 113 A. 761. In each of these cases the Maryland court held that even if the form of the deposit contained language which could be thought to raise a presumption that a trust was created, it could be rebutted by proof tending to show that the arrangement of the deposit was only for the convenience of the person depositing the money.

In a number of jurisdictions the courts have upheld the right of a codepositor to the funds in a joint deposit on the theory that the deposit represents a joint tenancy. *Wisner* v. *Wisner*, (1918) 82 W. Va. 9, 95 S. E. 802; Anno. 48 A. L. R. 203; 66 A. L. R. 891; 135 A. L. R. 1007; and 149 A. L. R. 890.

In several jurisdictions, this result is reached by virtue of statutory enactments. *Massey* v. *Cullen*, (1932) 145 Misc. 655, 260 N. Y. S. 120; *Marrow* v. *Moskowitz*, (1931) 255 N. Y. 219, 174 N. E. 460; *Maurice* v. *Coleman*, (1942) 56 Cal. App. (2d) 340, 132 P. (2d) 511; *Manufacturers Nat'l Bank* v. *Schirmer*, (1942) 303 Mich. 598, 6 N. W. (2d) 908; *In Re Perrone's Estate* (1950) 5 N. J. 514, 76 A. (2d) 518; Anno. 135 A. L. R. 1013 and 149 A. L. R. 893.

In the construction of the New York statute, subdivision 3 of § 239, New York Banking Law, it was held in *Marrow* v. *Moskowitz, supra,* that the effect of the creation of a deposit in the statutory form is to raise a presumption that the depositors are joint tenants, and this presumption becomes conclusive upon the death of one of the survivors as to any moneys then left in the account; but continues rebuttable to any moneys previously withdrawn; and that the facts with regard to the depositor's intention in regard thereto may be shown by extrinsic evidence.

In the case of *In Re Perrone's Estate, supra,* Chief Justice Vanderbilt, speaking for the court, held that the presumption raised by the New Jersey statute, R. S. 17:9A-218 N. J. S. A. was not conclusive. He said that the statute "lays down a rule of evidence rather than of substantive law. Words of joint tenancy or of common ownership merely constitute presumptive evidence of an interest by survivorship which stands until overthrown by proof *contra*," a reasoning applied by the Court of Errors and Appeals of New Jersey, in a case which construed two former statutes of that State, substantially similar to the one then under review. *Stiles* v. *Newschwander*, 140 N. J. Eq. 591, 594, 54 A. (2d) 767, 769.

In Virginia, survivorship, as between joint tenants, is abolished by § 55-20, except as to executors or trustees, and

as to "an estate conveyed or devised to persons in their own right when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others." § 55-21 Code of Virginia.

Here, no such intention manifestly appears, either from the tenor of the written instruction given to the bank, nor upon the mere form of the deposit.

■ We come next to the second contention of the appellant that the evidence establishes a gift causa mortis of the bank account.

There are two kinds of gifts: gifts simply so called, gifts inter vivos, and gifts causa mortis, or those made in apprehension of death. Appellant does not claim a gift in the first class. Thus, our consideration will be devoted to the latter class in which the distinctive elements are well settled. *Thomas' Adm'r* v. *Lewis*, 89 Va. 1, 15 S. E. 389, 37 Am. St. Rep. 848, 18 L. R. A. 170; *Snidow* v. *Brotherton*, 140 Va. 187, 124 S. E. 182.

"A gift causa mortis is a gift of personal property made by a party in the expectation of death, then imminent, and upon the essential condition that the property shall belong fully to the donee in case the donor dies as anticipated leaving the donee surviving him, and the gift is not in the meantime revoked." 9 M. J., Gifts, § 34, page 209.

In *Grace* v. *Virginia Trust Co.*, 150 Va. 56, 142 S. E. 378, dealing with the subject of gifts, Judge Burks said:

"A gift will not be presumed merely from the relationship of the parties, or the existence of motives for making it. *In every instance, the burden is upon the donee to establish the gift.*" (Italics added.)

See *Matthews* v. *Hanson*, 145 Va. 614, 620, 134 S. E. 568; *Knight* v. *Mears*, 156 Va. 676, 680, 159 S. E. 119; 9 M. J., Gifts, pages 185, *et seq.*

In 24 Am. Jur., Gifts, § 21, pages 738 and 739, this is said:

"It is well settled that there must be a clear and unmistakable intention on the part of a donor to make a gift of his property in order to constitute a valid, effective gift inter vivos or causa mortis."

In 38 C. J. S., Gifts, § 50, page 836, under the heading, "Deposit in name of donor and donee," this is said:

"Where the deposit by a person is in the name of himself and another, not his wife, the presumption is that it was done for the purposes of convenience only, and this presumption is strengthened by the illness or infirmity of the depositor.

"In determining whether there was a completed gift, the fact that the bank would be justified in paying the depositor is not conclusive, and it is immaterial that the bank paying the depositor is protected by statute; as stated in Banks and Banking, § 286, statutes merely protecting the bank do not change or affect the title to, or rights in a joint deposit."

In 7 Am. Jur., Banks, § 427, page 301, we find this statement:

"To constitute a deposit in the name of the depositor and another a valid gift, there must be an intention to make the gift; if there is no such intention, the survivor is not entitled to the fund on the theory now under discussion."

In § 428 of the same treatise, on page 302, this is said:

"The rule sustained by a majority of cases is that the mere fact that money is deposited to the account of the owner 'and' another, or of the owner, 'or' another, does not show an intent to make a gift. According to the view thus taken, it is deemed that such a form of deposit is entirely consistent with a desire on the part of the owner to give his codepositor authority to withdraw money for the owner. * * *"

The facts in the cases of *Thomas' Adm'r.* v. *Lewis, supra*; and *Snidow* v. *Brotherton, supra,* relied on by appellant, are essentially different from those in the instant case.

In the first named case, Thomas, under apprehension of imminent death, gave to his daughter, who lived with him

and devotedly cared for him, the manual or constructive possession of all of his bank books, and the keys to his vault, which contained other personal property, and told her, in the presence of a credible witness, that it was "hers in case of his death." He died a few hours thereafter.

In the *Snidow* case, *supra*, W. H. Carter was fatally injured while at work. While arrangements were being made to carry him to a hospital for treatment, he gave his trunk key to Bobbitt, superintendent of the corporation by which he was employed, told Bobbitt that if he, (Carter) died he wanted Anna Brotherton to have everything he had; and that in his trunk would be found his bank book, bonds, receipts, papers and other things, all of which he wished Anna to have, and requested Bobbitt to see that his wishes were carried into effect. All of this was corroborated by a disinterested witness. Carter died a few hours later at the hospital. He had no wife and had lived in the house of the father of the child, who was five years old, and had expressed his great affection for her. We held that the evidence was sufficient to show a valid gift causa mortis.

It is sufficient to say that there is no evidence that Americus V. Dodson anticipated death, or made a gift in expectation of imminent death. Moreover, the evidence and circumstances deny any intention to make a gift of his property to his daughter.

It will be noted that in the *Deal* case, *supra*, the court repeatedly said that its conclusion was based on the peculiar facts of that case. It pointed out the understanding of the depositors, the understanding or agreement with the bank, and the relation thereby created between the bank and the two joint depositors. The undisputed evidence clearly showed that Mrs. Deal intended to make, and did make, a deposit contract with the bank that upon her death the balance remaining in the account should become the property of her sister. In the present case no understanding or agreement was had with the bank other than that the joint account should be "subject to the check of either of us or

the survivor." The bank was not instructed that the part of the one dying should then belong to the other.

It seems to be well settled that a bank account may be so fixed that two persons shall be joint owners thereof during their lives, and the survivor take on the death of the other. This may depend upon the terms of the deposit, that is the contract made with the bank, or upon the intention of the depositors as disclosed by their declarations, oral or written.

Had Dodson intended that his daughter should have the fund in the joint account, before or after his death, he could have so provided by appropriate action or instrument.

It is significant, we think, that about two and one-half years after the savings account was changed to the joint names of the deceased and his daughter, Lottie King, he made a will in which he left all of his property of every kind and description wheresoever situated to his children, share and share alike.

On May 24, 1949, he merely said to Mrs. King that if anything happened to him, the money would be hers. This was not a gift *in praesenti*. It did not confer possession of the money until the donor's death. It was at most only an abortive testamentary act and not a gift. It is also significant that the deceased did not turn the passbook over to Mrs. King on May 24, 1949, but handed it to her, together with his pocketbook, more than two years later, while waiting for an ambulance to take him to the hospital.

According to Mrs. King, he had no other funds or income save a small monthly retirement payment; he had been feeble for several years; he was being taken to a hospital where his movements would be limited; and he knew that his necessary hospital, drug, and nurse expenses would have to be paid. Mrs. King said she knew this too, and expected that such expenses paid by her would be repaid from the savings account.

The facts and circumstances in evidence are sufficient to sustain the Commissioner's finding, approved by the trial court, that the deceased put the savings account in the joint

name of himself and daughter as a matter of convenience. The Commissioner had the opportunity to see and hear the witnesses. He was free to weigh the evidence and reject the testimony of a witness, even though not directly contradicted, when it was contrary to circumstances given in evidence, or contained contradiction in connection with other circumstances in evidence, which excited suspicion as to its truth. The uncertain, confusing and contradictory testimony of the plaintiff herself is sufficient to cast doubt upon its credibility. The evidence of the appellees and the surrounding facts and circumstances all point to the conclusion that the Commissioner and trial court reached a correct conclusion.

We are not unmindful that in the great mass of decisions relating to the subjects herein considered there is not only much conflict; but that there are cases in which some courts have reached a conclusion differing from our determination. However, each of the decisions must be considered in relation to the peculiar facts of each case and the law of the jurisdiction wherein it was reached.

It is fully competent for the General Assembly of Virginia to provide by statute what presumptions, if any, shall arise as to the property rights of a survivor to the funds in joint savings account upon the death of his codepositor. In the absence of such statutory presumptions, we adhere to the rule that when a person deposits his money in bank to the credit of himself and another, payable to the order of either, or the survivor of them, the rights and interests of the depositors as between themselves are dependent upon the question whether the owner of the money intended to make a gift to the other, or whether the account was entered in joint form in accordance with a contract or for other purposes.

For the reasons stated, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*