## Staunton

THELMA GREELEY KETTLER v. WELLS GREELEY, ET AL.

September 4, 1970.

Record No. 7161.

Present, All the Justices.

*J. Sloan Kuykendall (Paul Crosney (N.Y.); Kuykendall and Whiting,* on brief), for appellant.

*William B. O'Connell (J. Randolph Larrick; Nicholas D. Ward (D.C.); Largent, Anderson & Larrick; Hamilton and Hamilton (D.C.),* on brief), for appellees.

GORDON, J., delivered the opinion of the court.

This appeal involves shares of stock registered in the names of joint tenants with right of survivorship. The issue is whether the stock passed outright to the surviving tenant upon the death of the other tenant.

Minnie A. Greeley and her husband, Albert, owned two farms in Iowa called the North Farm and the South Farm—the North Farm as joint tenants with right of survivorship and the South Farm as tenants in common. By virtue of Albert's death in 1955, Minnie became sole owner of the North Farm. At the same time, she inherited a one-sixth interest in the South Farm from Albert, increasing her total undivided interest to four-sixths. Albert's and Minnie's children, Merritt A. Greeley and Thelma Greeley Kettler, each

inherited a one-sixth undivided interest in the South Farm from Albert.

In March 1956 Minnie conveyed to Merritt and Thelma each a one-third undivided interest in the North Farm, reciting in the deed that she was conveying "what [was] rightfully her son's and daughter's inheritance from the estate of their father Albert H. Greeley". Minnie, Merritt and Thelma sold the North Farm for $60,000 in June 1957. Of the net proceeds of sale, $15,262 was distributed equally to Merritt and Thelma in cash, and the balance of $34,750 was used to buy 200 shares of AT&T stock. One hundred shares were registered in the names of Minnie and Merritt as "joint tenants with right of survivorship and not as tenants in common", and 100 shares were registered in the names of Minnie and Thelma as "joint tenants with right of survivorship and not as tenants in common".

Minnie, Merritt and Thelma sold the South Farm for $70,000 in June 1958. Although the record does not show the disposition of all the net proceeds of sale, it shows that $15,000 was distributed to Merritt in cash and $44,885 was used to purchase 244 shares of AT&T stock. Eighty-one shares were registered in the names of Minnie and Merritt as "joint tenants with right of survivorship and not as tenants in common" and 163 shares in the names of Minnie and Thelma as "joint tenants with right of survivorship and not as tenants in common".

During the period 1957-1961, all dividends on the AT&T stock were turned over to Minnie. Minnie included all dividends in her income tax return for 1957, but for 1958 through 1961 Minnie, Merritt and Thelma included all the dividends in their joint partnership returns and in varying percentages in their individual returns.

Minnie was living in Washington, D. C. when Albert died, when she conveyed interests in the South Farm to her children, when the Farms were sold and when the AT&T stock was bought. She was living in Frederick County, Virginia in March 1962, when she was judged incapable of handling her affairs and Merritt and Thelma were appointed her committees. At that time, 828 shares of AT&T stock were registered in the joint names of Minnie and Thelma, and 570 shares were registered in the joint names of Minnie and Merritt. The increased holdings resulted from a 3 for 1 stock split and the exercise of warrants.[1]

---

[1] Exercise of warrants produced 27 additional shares registered in the joint names of Minnie and Merritt and 39 additional shares registered in the joint names of

In April 1962 Merritt, with Thelma's concurrence as co-committee, sold 285 shares of AT&T stock registered jointly in Minnie's and his name.[2] Merritt invested the proceeds, amounting to about $25,000, in his name and for his account.

Merritt died in 1964. Thelma brought this suit in 1965, seeking advice and guidance respecting the ownership of the AT&T stock.[3] Minnie died in 1966, during the pendency of this suit in the trial court.

After hearing evidence, the trial judge held that Minnie's estate owned all AT&T stock registered in the joint names of Minnie and Merritt and in the joint names of Minnie and Thelma. Thelma appeals.

The trial judge adopted the premise that because Merritt and Thelma supplied no valuable consideration for the purchase of the AT&T stock, Thelma had the burden of establishing a gift *inter vivos*, but she could "rest upon the presumption created by the documents [the stock certificates]". The judge concluded, however, that Thelma had not sustained the burden of proving Minnie's intent to make an *inter vivos* gift of the stock.

We do not agree with the trial court's premise or conclusion. By virtue of previous gifts, which are not now attacked, Merritt and Thelma owned undivided interests in the North Farm when it was sold in 1957. And when the South Farm was sold in 1958, Merritt and Thelma owned undivided interests by inheritance from their father. So when the Farms were sold, Merritt and Thelma had undivided interests in the proceeds of sale. By agreement with their mother, the owner of the remaining undivided interests, proceeds of each sale were used to buy AT&T stock registered in the joint names of Minnie and Merritt and Minnie and Thelma.

Whether or not the parties' proportionate interests in the stock equaled their proportionate interests in the proceeds of sale, the transaction was effected by agreement among them, not by gift from

Minnie and Thelma. The consideration for the additional shares in Minnie's and Merritt's joint names included the warrants issued to them jointly, plus cash supplied by Minnie; the consideration for the additional shares in Minnie's and Thelma's joint names included the warrants issued to them jointly, plus cash supplied by Minnie and Thelma.

[2] Merritt and Thelma endorsed a certificate for 362 shares, all of which were sold. As a simultaneous transaction, Merritt bought 77 shares of AT&T, which were registered jointly in Minnie's and his name.

[3] Thelma also sought advice and guidance respecting the ownership of joint bank accounts, which are not involved in this appeal but are mentioned *infra*.

Minnie. Each party supplied valuable consideration for the purchase of the stock.

But counsel for Merritt's widow and son contend that when the North and South Farms were sold, Merritt and Thelma gave their shares of the proceeds to Minnie. We do not interpret the trial judge's opinion, however, as making such a finding.

Rather, the trial judge considered together a series of transactions involving (1) the sale of the North and South Farms and the investment of proceeds in AT&T stock, (2) Minnie's subsequent sale of her home in the District of Columbia and a gift of the proceeds to Merritt and Thelma, and (3) Minnie's opening of bank accounts in the joint names of Minnie and/or Thelma and her subsequent gift of one account to Thelma. The judge said in his opinion: "The transactions considered all together formed a pattern which leads to the inevitable conclusion that there was no intention by any of the parties to enter into a contract or create a trust. The transactions were essentially voluntary."

The judge recognized the usual presumption that the depositor who supplies the funds opens a joint bank account for his own convenience and not as a gift to the other depositor. *King, Ex'x* v. *Merryman, Adm'x*, 196 Va. 844, 86 S.E.2d 141 (1955). While recognizing that this presumption does not apply to a gift of stock, the judge concluded "it would be a travesty to say that Minnie intended to create an interest *in praesenti* as to the stock but not as to the bank accounts".

In fact, the sales of the North and South Farms and the purchases of AT&T stock were not only separate in time, but were also different in character from the subsequent transactions involving gifts by Minnie. The judge therefore was not warranted in considering the sales of the Farms and the purchases of stock as part of a gift pattern. Because all the parties had an interest in the lands and the proceeds, the stock purchases involved valid agreements among them, rather than gifts by Minnie.

When the parties bought stock registered in the names of Minnie and Merritt and in the names of Minnie and Thelma, in each case as "joint tenants with right of survivorship and not as tenants in common", they created clearly defined estates: each tenant to have a one-half undivided interest in the shares during the tenants' joint lives and the surviving tenant to have outright ownership. Therefore, upon Merritt's death, all shares registered in Minnie's and his joint names

passed outright to Minnie; upon Minnie's death, all shares registered in Thelma's and her joint names passed outright to Thelma.

Since this case involves the purchase of stock by agreement, instead of a gift of stock, we need not discuss cases involving gifts that are relied on in the briefs—*e.g., Haynes* v. *Hurt*, 209 Va. 447, 164 S.E.2d 671 (1968) (involving a gift by assignment of a mortgage); *Robinson* v. *Lee*, 205 Va. 363, 136 S.E.2d 860 (1964) (involving a gift of stock).

Because Minnie lived in the District of Columbia when the North and South Farms were sold and the AT&T stock was bought, the trial judge applied the law of the District. Counsel for Merritt's widow and son relies on District of Columbia cases, *e.g., Murray* v. *Gadsden*, 197 F.2d 194 (D.C.Cir. 1952), that are inapposite because they involve joint bank accounts. We have found no District of Columbia case involving a purchase by agreement that is contrary to the conclusion we have reached.

We reverse the decree appealed from and remand the case for the entry of a decree consistent with this opinion.

*Reversed and remanded.*