## CIRCUIT COURT OF WASHINGTON COUNTY

Vada F. Scyphers, Executrix, et al.

v.

E. Dean Ferguson et al.

March 4, 1988

By JUDGE CHARLES H. SMITH, JR.

Ellis Dewey Ferguson departed this life testate on the 24th day of April, 1986, in Washington County, Virginia. At the time of his death, Mr. Ferguson was survived by five children and certain grandchildren. Mr. Ferguson's will, dated September 16, 1981, was duly executed and was probated in the Clerk's Office of the Circuit Court of Washington County on April 30, 1986, and is found in Will Book 102, page 47. A codicil to said will, dated April 1, 1986, also duly executed, was recorded therewith. *"BY CLAUSE THIRD"* of his will Mr. Ferguson directed that "all intangible personal property including cash, bonds, certificates of deposits of savings accounts shall be equally divided amongst my six children, or the surviving children thereof. . . ." *"BY CLAUSE FOURTH"* Mr. Ferguson directed that the residue of his estate be divided the same way. There is no mention of any joint accounts as being in existence at the time of execution. The codicil to the will does mention two "certificates" as being then in existence and being in the name of Dean *or* E. D. Ferguson. The testator's intended disposition of those two certificates as, indeed, his disposition of "all certificates" by this codicil is obviously different from that which was made by the will.

There was, in fact, in existence at the time the codicil was executed two certificates of deposit in the

joint names of Dean *or* E. D. Ferguson. One certificate in the principal amount of $17,727.43 with Central Fidelity Bank was dated December 2, 1985. The other certificate in the principal amount of $10,000.00 with Sovran Bank was dated April 28, 1982. The signature cards filed with these two institutions clearly indicate that these were joint accounts with survivorship.

The debts and expenses of the estate have been paid and it is now ready for distribution. The executrices and administrator have filed this bill for guidance in construing certain aspects of the will and codicil. One of the respondents to said bill, E. Dean Ferguson, has demurred to the bill claiming there is no genuine dispute, that as a matter of law the funds remaining on deposit in these two accounts in his joint name belong to him as survivor.

The issue, of course, is whether these funds belong to E. Dean Ferguson as his sole, separate property or whether they pass as per the terms of the will and codicil.

I believe in order to find the answer to this inquiry we need look no further than to the provisions of the Multiple-Party Accounts Act as contained in chapter 2.1 of Title 6.1 of the Code. I believe it well to review briefly a little of the history of this act.

Prior to the inception of this act there was great uncertainty in Virginia and elsewhere in the area of multiple-party accounts. The Virginia Supreme Court clearly recognized problems of such accounts as it stated in the case of *King v. Merriman*:

> For more than half a century, the courts of this country have struggled to discover whether a joint deposit bank account with an extended right of survivorship is a gift, a trust, a contract, or joint tenancy, or a testamentary disposition. (196 Va. 844 (1955))

The Supreme Court went on to enunciate the rule of law existing at that time as follows:

> It is fully competent for the General Assembly of Virginia to provide by statute what presumptions, if any, shall arise as to the property

rights of a survivor to the funds in joint savings account upon the death of his co-depositor. In the absence of such statutory presumptions, we adhere to the rule that when a person deposits his money in a bank to the credit of himself and another, payable to the order of either, or the survivor of them, the rights and interests of the depositors as between themselves are dependent upon the question whether the owner of the money intended to make a gift to the other, or whether the account was entered in joint form in accordance with a contract or for other purposes. (Emphasis added.)

A movement to rectify the uncertainty in the area of multiple-party accounts was initiated by the Virginia Bar Association. In 1975 a blue ribbon committee composed of members of the bar, banking and other lending institutions was organized to study this problem and submit a report. After the report was submitted, a drafting committee was appointed in 1978 to draft a comprehensive multiple-party accounts bill for introduction into the 1979 session of the General Assembly. The committee's proposal was introduced and approved and became law effective July 1, 1980. (*See* 14 U. Rich. L. Rev. 851, 1980).

A review of certain sections of the act, in addition to ones cited by counsel, is enlightening.

Section 6.1-125.1 defines "account" as a contract of deposit between a depositor and a financial institution and includes a certificate of deposit. The same section defines "joint account" as an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship. "Multiple-party account" means joint account, etc. It is clear that these certificates were multiple-party account contracts with these financial institutions.

Section 6.1-125.15 requires every financial institution to maintain either of two types of forms for the creation of joint accounts. They may maintain two separate forms, one clearly labeled "joint account with survivorship" and the other clearly labeled "joint account - no survivorship" or they may maintain just one form clearly labeled with both types of accounts with appropriate blank spaces

beside each for signatures. The exhibits filed herein reveal that the two banks involved used the latter type of form. In each instance, these forms were clearly signed under the label "joint account with survivorship."

Section 6.1-125.5(A) provides "sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account was created. . . ." Subsection E. thereof provides; "A right of survivorship arising from the expressed terms of the account . . . cannot be changed by will."

Section 6.1-125.7 provides; "Any transfers resulting from the application of 6.1-125.5 of the Code of Virginia are effective by reason of the account contracts involved and this statute and are not to be considered as testamentary . . ."

By adopting Section 6.1-125.5(A) the General Assembly has apparently done exactly what was suggested in the *King* case above. That is, they have created a presumption that these sums belong to the surviving party. They also have exacted a strong burden, clear and convincing evidence, from one who would attempt to prove that a different intent existed at the time the account was created. The petitioners contend that a joint will made between Mr. Ferguson and his wife, dated December 12, 1974, and an agreement dated May 14, 1980, both exhibited herein, provided clear and convincing evidence of just such a different intention. It should be noted that Mr. Ferguson was not even a party to that contract, and it is his intention that is important on this issue. In addition, what Mr. Ferguson's intentions were or might have been in 1974 and 1980 bear no reasonable nor rational relation to what they were or might have been several years later when these accounts were opened. It is the intention at the time the account is created that is controlling.

Finally, a will speaks as of the date of death. Mr. Ferguson knew, when he opened these accounts, that he had a will and, presumably, knew what his assets were and what disposition he had made thereof. The will would have caused a division of all certificates equally amongst the six children. That disposition was frustrated by and

a new intention evidenced by his subsequent creation of these accounts.

Nor can it be argued that the codicil, executed subsequent to the account, provides clear and convincing evidence of a different intent and should be given the effect. Obviously, the accounts predated the codicil, and therefore the codicil can provide absolutely no evidence of what his intention was when the accounts were created. That question is moot, in any event, since Section 6.1-125.5(E) provides that such accounts cannot be changed by will.

For the foregoing reasons, I believe the provisions of this act are clearly applicable to the factual situation presented. In accordance therewith I would rule that, in the absence of clear and convincing evidence to the contrary, the sums remaining on deposit in these accounts are the separate property of the respondent, E. Dean Ferguson, as survivor.

Insofar as any remaining certificates are concerned, the provision made therefor in the codicil is certainly different from that made in paragraphs third and fourth in the will. The disposition thereof depends upon the nature of the account, whether single or multiple party and whether with or without survivorship. If multiple with survivorship, they obviously would fall within the purview of the Multiple-Party Accounts Act as discussed above and could be disposed of according to the terms thereof. If multiple without survivorship they still are governed by the Act but should be disposed of according to the terms of the codicil to the will. (Section 6.1-125.5(D)) If in the name of the testator only, they obviously pass under the terms of the codicil.

The terms of the codicil indicate the necessity for the establishment of a trust to administer any funds from any certificates passing thereunder. A reading of the will and codicil together and giving full meaning to the provisions that do not conflict indicates the testator intended a distribution of these funds amongst his children or survivors thereof on a need basis. Notwithstanding the court's above ruling concerning the survivorship certificates, there is nothing to prevent the respondent, E. Dean Ferguson, from also benefiting from the proceeds of any trust fund so created.

Any one or more of the legatees under the will may qualify as trustee before the clerk of court upon giving bond with surety and taking the oath for the faithful execution of the trust. The *corpus* of the trust will consist of any remaining certificates as discussed above. The amount of the bond with surety should be equal to the total principal amount of all such certificates. No surety will be required if the amount is less than $5,000.00 total unless specifically requested by a beneficiary.

Any income derived from said certificates that has accrued since the death of the testator should be divided equally among the beneficiaries. (*See* Uniform Principal and Income Act, Sections 55-253 through 55-268 of the Code.) Any future income earned on said certificates should be divided likewise when paid after deducting any commissions or other expenses incidental to the administration of the trust.

The trust may be terminated in at least three different ways: (1) Automatically upon depletion of the entire *corpus* of the trust; (2) By agreement of all the beneficiaries if all are *sui juris* and otherwise competent; (3) By order of the court upon petition of the trustee filed pursuant to Section 55-19.2 of the Code. If terminated according to numbers 2 or 3, any remaining balance of the trust *corpus* would be distributed equally among the beneficiaries.