# Staunton

## SARAH E. JOHNSON v. BARBARA LEE McCARTY, ET AL.

September 2, 1960.

Record No. 5122.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*George Walter Mapp, Jr.* and *William King Mapp*, for the appellant.

*B. T. Gunter, Jr.* and *B. Drummond Ayres*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

J. Roland Johnson, a resident of Accomack county, Virginia, died March 13, 1957, leaving a widow, Sarah E. Johnson, sometimes known as Sarah N. Johnson, and two children by a former wife, surviving him. His first marriage was dissolved by divorce, and he thereafter married Sarah E. Johnson, the appellant, in April 1943. He resided in Maryland at that time and was engaged in business at Salisbury, in that State.

He left a will dated February 24, 1948, which was duly admitted to probate in the Clerk's Office of the Circuit Court of Accomack county on March 25, 1957. Sarah E. Johnson and Stanley G. Robbins qualified as executors of his estate.

The first item in the will provides for the payment of testator's debts, of which there were none.

The second item bequeaths 300 shares of a building and loan association to a named person; but the shares were disposed of by testator before his death.

The third item undertook to dispose of certain oyster grounds and personal property, but these had also been sold.

In the fourth and fifth items of the will, the testator says:

"FOURTH: I give, devise and bequeath unto Barbara Lee North and J. Roland Johnson, Jr., jointly, for life, my Main Street store, located in Salisbury, Maryland, and, upon the death of the said Barbara Lee North, the same to descend to her child or children, subject to the conditions hereinafter set forth; and, upon the death of the said J. Roland Johnson, Jr., his interest is to descend to his children, subject to the condition hereinafter set forth; and, should the said J. Roland Johnson, Jr. not be of the age of twenty-one (21) years, at the time of my death, I direct that, from the rentals and proceeds, there be first deducted ten per cent (10%) for maintenance, taxes, and insurance, and one-half of the residue shall be deposited in the Salisbury National Bank, to the credit of the said J.

Roland Johnson, Jr., until he becomes the age of 21 years. The remaining one-half of the net proceeds is to be paid to the said Barbara Lee North, but it is further stipulated that, in event the ten per cent (10%) of the gross rentals is insufficient to take care of the taxes, insurance, and maintenance, then, and in that event, a larger percentage may be deducted from the gross rentals before the division is made by and between them. * * *"

"FIFTH: I give, devise and bequeath unto my beloved wife, Sarah E. Johnson, one-third (1/3) of my net estate, same to be determined as follows: Upon my death, I direct that my property, located in the State of Maryland, be appraised, by the aforementioned appraisers, and that my estate in the State of Virginia be appraised by the then Cashiers of the Hallwood National Bank, the County Treasurer of Accomack County, and H. Ames Drummond, and I direct that the bonds, secured by mortgages in the State of Florida, be appraised at face value. The appraisal of my estate is to include monies on deposit, life insurance, and all other personal property owned by me, and to likewise include an appraisal of the Main Street store in Salisbury, heretofore devised to my children. My said wife is to have the right to accept any and all properties, exclusive of the Main Street store in Salisbury, at the appraised price, and to credit same until her share has been received on the one-third interest herein devised to her, and, in the event that my estate, exclusive of the Main Street store in Salisbury, is not sufficient to pay to my said wife one-third of my net appraisal, I direct that the rents and profits, from said Main Street store in Salisbury, be paid to my said wife, until she has received one-third of my net estate, and that my said daughter, Barbara Lee North, and my said son, J. Roland Johnson, Jr., shall receive no rents from said property until and after my said wife has received her full share of one-third of my net estate. * * *"

In the fall of 1944, the testator and his second wife moved from Maryland to Florida, where they remained until 1947. They then returned to Virginia and established their home in Accomack county, where they remained until 1949. In the latter year they returned to Florida, stayed there until 1955, and then returned to Accomack county, Virginia, where they again established their residence, and were residing when Johnson died in 1957.

Before his second marriage, testator acquired the store property on Main street in Salisbury, Maryland, and an interest in some vacant lots near Salisbury. Upon his first visit to Florida, he and his brother

bought some real estate. This real estate they sold, and testator then entered into a partnership with another man, building houses for sale, until he returned to Virginia.

At the time testator executed his will, he was in possession of two bonds secured by mortgages on real estate in Florida, and had on deposit funds in his own name in the Hallwood National Bank, Hallwood, Virginia. At the same time there was outstanding an insurance policy on Johnson's life, in which his two children were named as beneficiaries. On December 2, 1953, this policy was surrendered for its cash value.

The record is silent as to the amount of the above two bonds or to whom they were payable; but it does show that they were later sold, or traded, in part or whole, for real estate taken in the name of Johnson and wife.

On his second stay in Florida beginning in 1949, Johnson entered into the real estate and home construction business with Mrs. Johnson actively engaged with him. She kept the books of the business, made up the payrolls, and managed and collected the rents from the apartment building which they owned. Johnson was apparently a competent and successful businessman, and the enterprises in which he engaged were profitable. When he and his wife returned to Virginia in 1955, they were in comfortable financial circumstances.

During his last stay in Florida, Johnson and his wife acquired three bonds secured by mortgages on Florida real estate. These bonds were executed and delivered in Florida to Johnson and his wife, who were at that time residents of Florida, in accordance with a "Declaration of Domicile and Citizenship," filed by Johnson on January 25, 1950, and duly recorded in the Clerk's Office of the Circuit Court of the County of Broward, Florida.

On March 13, 1957, the date of the death of Johnson, these three bonds had a cash value of $73,283.21. One of them, of the value of $59,220.26, was made payable to "J. Roland Johnson and Sarah N. Johnson, his wife." The second, of the value of $5,186.42, was assigned by former owners to "J. Roland Johnson and Sarah N. Johnson, his wife." The third bond bore the same assignment.

After the death of Johnson, his widow filed a death certificate of her husband in the recording office in Florida, where the mortgages were recorded, and since that time payments due on the bonds have been made directly to Mrs. Johnson in her individual capacity.

Before his death, testator changed his account in the Hallwood

National Bank from "J. Roland Johnson" to "J. Roland Johnson or Sarah N. Johnson, joint owners, payable to either or the survivor." On deposit in this joint account at testator's death, was the sum of $1,473.

It further appears that at the death of testator there were in existence three United States Bonds aggregating $700, payable to J. Roland Johnson, Sr. and J. Roland Johnson, Jr., purchased with the proceeds from the surrender of the life insurance policy heretofore mentioned. Following the death of Johnson, Sr., these bonds were delivered by the executors to J. Roland Johnson, Jr. No objection has been filed to this transaction.

The relations between the testator and his children were normal and pleasant. It is shown that he had adanced an unnamed amount of money to his daughter and her first husband, which had not been repaid, and that he had contributed to the support and maintenance of his son until the latter became self-supporting.

In performance of their duties, the executors had the estate of testator in Maryland and Virginia appraised. The assets of his estate, both real and personal, according to the appraisal, were estimated to amount to $58,600, which included a valuation of $49,500 on the Salisbury store building, a one-half interest in a house and lot in Virginia, a one-half interest in two unimproved lots near Salisbury, Maryland, some personal assets, but no intangible property.

A proposed settlement of the estate by the executors showed that Mrs. Johnson was entitled to $18,214.45, one-third of the net appraisal of testator's estate after expenses and administration. Since the whole of the estate, exclusive of the store in Salisbury, was not sufficient to pay the widow the one-third devised to her, her legacy was credited by rents and profits received from the store to April 16, 1948, amounting to $2,846.79, leaving a net deficiency of $10,244.31 due to Mrs. Johnson from the said profits and rents, under the specific provisions in the fifth item of the will.

On August 30, 1958, Barbara Lee McCarty and J. Roland Johnson, Jr. instituted this suit against Sarah E. Johnson, individually, and Sarah E. Johnson and Stanley G. Robbins, executors, praying for a settlement of the account of the executors; that the will of the testator be construed; that the rights of all parties be adjudicated; and that the defendants be required to turn over to the complainants their proper share of J. Roland Johnson's estate. The defendants answered the bill, and denied that testator owned any intangible personal prop-

erty at his death, to which complainants were entitled. They further alleged that the will of testator was clear and needed no construction.

Complainants filed a replication, in which they alleged that the testator owned the three bonds amounting to $73,283.21 and the deposit in the Hallwood National Bank. They further alleged that it was the intention of the testator to dispose of these intangibles under the fifth item of his will, and that under a proper construction thereof, Sarah E. Johnson was entitled to receive no more than one-third of testator's net estate including the named intangibles. They prayed that if it should be determined that Mrs. Johnson was entitled to the said bonds and bank deposit by virtue of title acquired independently of the will, that she be required to elect whether she would take under the will, or take independently of the same, and that if she elected to take independently, she be precluded from all rights under the will. Mrs. Johnson and the executors filed their joint answer to the replication, denying the allegations of the replication.

Mrs. Johnson, in her answer to complainants' replication, further contended that to require her to make an election, under the facts of this case, would deprive her of her legal rights because of the laches of the complainants in instituting their suit "one month and five days following the expiration of the sixteen months period in which the executors were required to file an accounting," and beyond the period when she had the right to renounce the will and claim her distributive share of the personal estate under Virginia Code, § 64-16, and waive jointure and demand dower under Virginia Code, § 64-32.

The court made no ruling on this contention, and in view of the conclusion which we have reached upon the principal issue, it will be unnecessary to further discuss it.

The case came on to be heard *ore tenus* by the court and the learned chancellor held:

(1) That it was the intention of the testator to devise to his widow only one-third of his net estate, and to limit her thereto;

(2) That his net estate should be determined for the purpose of ascertaining the value of the provision for Mrs. Johnson by including in the appraisal of the assets of the estate the three Florida bonds in existence at testator's death, and the deposit of $1,473 in bank;

(3) That Mrs. Johnson had "the right to accept any and all of the above properties, exclusive of the Main street store in Salisbury,

at the respective appraised prices, in satisfaction of the devise to her;"

(4) That the gross value of the testator's estate as of the date of his death, as determined by appraisals, made in accordance with the provisions of testator's will, was $133,356.21;

(5) That the estimated expense of said estate, including administration, as of April 16, 1958, according to said executors, amounted to $3,956.65;

(6) That the deposit in the Hallwood National Bank and the bonds secured by the Florida mortgages, upon the death of the testator, became the property of Mrs. Johnson by operation of law;

(7) That Mrs. Johnson, "by virtue of having received the above mentioned bonds and bank account by operation of law, had already received more than one-third of testator's net estate, as defined by him in his will, and, therefore, had received a larger share than the testator intended to devise and bequeath to her;" and

(8) That Mrs. Johnson "should be put to her election to hold the deposit and bonds aforesaid, which she acquired by operation of law, and release any other interest she might have in testator's estate, or else surrender said bonds and deposit to the executors of the estate and take the provision made for her under the will."

No objection was made to any of the above rulings by complainants. Mrs. Johnson objected and excepted to the rulings set out in items above numbered as 2, 4, 7 and 8, and we granted this appeal.

In considering the issues raised, we begin with the fact that the bonds and bank account involved became the property of Mrs. Johnson by operation of law, and not by virtue of the will.

In Florida, when property, real or personal, is purchased by the husband and deeded to the husband and wife jointly, an estate by the entireties is created, and the presumption of law is that it was intended as a gift to the wife. *Strauss* v. *Strauss*, 148 Fla. 23, 3 So. 2d 727, 728; *Colclazier* v. *Colclazier*, (1956, Fla.), 89 So. 2d 261 and *Lauderdale* v. *Lauderdale*, (1957, Fla.), 96 So. 2d 663.

In Virginia, when an estate by the entireties is once set up, neither spouse can sever it by his or her sole act. Neither may convey or dispose of any part of it to effect such a severance; but they may terminate the estate by a joint conveyance. Upon the death of either spouse, the whole of the estate by the entireties remains in the survivor. The heirs of the deceased spouse inherit no part of property

so held. The entire estate remains exclusively in the surviving spouse. *Vasilion* v. *Vasilion*, 192 Va. 735, 740, 66 S. E. 2d 599.

The method and procedure of setting up the Virginia bank account created a joint estate with the express right of survivorship. Virginia Code, § 55-21.

The major issue in this case is whether the testator, in the fifth clause of his will, intended that the Florida bonds and bank account here involved should be included in the appraisal of his estate for the purpose of determining the one-third share of his widow in his net estate.

The will speaks as of the time of the death of the testator. If there be any question as to the meaning of his language, we look to the facts and circumstances existing at the time he executed his will to ascertain his intent. When we do that, we observe that testator then had an account in the Hallwood National Bank in his own name and owned two Florida bonds. At the date of his death, he had closed out the bank account and disposed of those two bonds. Subsequent to the execution of the will, the bank account with the right of survivorship, was established and the three bonds here involved were acquired in Florida in the name of the testator and his wife, as an estate by the entireties. He made other changes in his property holdings. He converted an insurance policy on the life of his son, and with the proceeds bought United States Bonds in the amount of $700, in the joint names of himself and son. He sold real estate owned by himself and his wife, and later purchased a home in Virginia in their joint names.

Testator made no change in the title to his Salisbury store property which he desired his children to receive, subject to the conditions specified in his will. For the purpose of determining *his net estate*, he very properly directed that the store property be included in the appraisal of *his* property.

Johnson did not undertake to dispose of any intangible property by will, except the building and loan stock mentioned in item two. He bequeathed one-third of his net estate to his wife, but made no disposition of the residue. After the satisfaction of the bequest to her, the residue, not disposed of by will, passed by operation of law to his two children, his only remaining heirs at law.

When we look at the fifth item of the will, we see that testator specifically refers only to property which *he* owned, that is, *"my net estate," "my property,"* and *"personal property owned by me."*

After specifically providing for an appraisal of *his* estate, he further said that "in the event that my estate, exclusive of the Main Street store in Salisbury, is not sufficient to pay to my said wife one-third of *my net appraisal,* I direct that the rents and profits, from said Main Street ·store in Salisbury, be paid to my said wife, until she has received one-third of *my net estate, * * *.*" (Emphasis added.)

Testator was a man of extensive and varied business experience in Maryland, Florida and Virginia. At one time he owned a large number of shares of capital stock in a building and loan association; he had engaged in the oyster and marine railway business; he had purchased life insurance; and he had bought and sold real estate in each of the three mentioned states. He must have known of the effect of having the bank deposit made in the name of himself and wife, "payable to either or the survivor," and in having the Florida bonds made payable to husband and wife. Had he intended that the above-named intangibles be included in the appraisal of property owned by him individually, for the purpose of ascertaining the one-third share bequeathed to his wife, or that those intangibles be held by his widow in lieu of a one-third share in his estate, it would have been a simple matter for him to have so provided.

The repeated use of the personal pronoun as applied to ownership of property emphasizes the distinction between his property and property which did not belong to him. As an intelligent man, testator knew the value of his estate. He knew that the intangibles described amounted to considerably more than one-third, whether or not they were included in the appraisal of his estate. He must have known that *his net estate,* exclusive of the Salisbury store, would not be sufficient to provide his wife the one-third interest bequeathed to her, and, therefore, he directed that the rents and profits from the store be charged with an amount sufficient to make up the deficiency.

In *Gregory, et al.* v. *Gates, et al.,* (1878) 30 Gratt. (71 Va.) 83, in speaking of the doctrine of election, it is said:

"But in order to raise a case of election, there must appear in the will itself a clear intention on the part of the testator to dispose of that which is not his own. See 1st Lead. Cas. Eq. (*Noys* v. *Mordaunt*); Hare & Wallace's Notes, p. 284 (marg.), and numerous cases there cited. As was said by Lord Eldon, in *Rancliffe* v. *Parkyan,* 6 Dow, P. C. 149; 'Prima facie it is not to be supposed that a testator disposes of that which is not his own. It must be by demonstration plain, by necessary implication, meaning by that the utter improba-

bility, that he could have meant otherwise, that the case (of election) is raised. It rests upon those contending for a case of election, to show that there is that manifest, plain demonstration and utter improbability.' * * *''

There is nothing on the face of Johnson's will, considering all its provisions and construing it as a whole, which shows a clear intent on the part of the testator to dispose of any property which was not his own. The widow does not claim against the will. There is nothing inconsistent between her retention of the property which became hers by operation of law, and taking one-third of the net estate as provided by the will. *Norman* v. *Cunningham*, 5 Gratt. (46 Va.) 63.

In *Seaton* v. *Seaton*, 184 Va. 180, 34 S. E. 2d 236, the decedent owned a homestead in Florida, where he was domiciled, and real estate in the city of Richmond, Virginia. Upon his death, the homestead in Florida passed under the law of Florida in fee to his widow. In his will, he attempted to devise all of his real estate in Florida and Virginia to a trustee, reserving to his wife the use of the Florida property as a home during her life. The widow filed a certificate of election in the State of Florida, taking under the will of the testator, except as to the homestead property which she claimed as her own. Beneficiaries under the trust attacked the right of the widow to take the homestead in Florida, and also take under the will, without making reparation for the loss to the remaindermen caused by her election.

Quoting from *Anderson* v. *Anderson*, 70 S. D. 165, 16 N. W. 2d 43, 44, where the facts were very similar to those in the above case, we said:

" 'The presumption is that the testator did not intend to deprive the widow of any estate given her by law, and that the provisions of the will were intended as a bounty in addition to that which she already had. The widow is therefore entitled to claim the homestead as well as the benefits conferred by the will, unless the provisions of the will are so repugnant to the claim of homestead that they cannot stand together. * * *' " 184 Va., pages 186, 187.

It is true that the one-third share left to Mrs. Johnson by her husband's will, added to that which was already hers, is far in excess of what his children, the complainants, will receive from the estate; but that provides no reason for the court to disregard his clear intention and make a new and different will for him.

In the recent case of *Womble* v. *Gunter*, 198 Va. 522, 532, 95 S. E. 2d 213, we said:

"The court is not concerned with whether an heir or a devisee receives the property of a decedent. The normal freedom of the owner to dispose of his property as he sees fit should not be curtailed unless the disposition violates some rule of law or is against public policy."

In support of their contention that Mrs. Johnson was put to an election, complainants cite and rely upon *Penn* v. *Guggenheimer*, 76 Va. 839; *Pence* v. *Life*, 104 Va. 518, 52 S. E. 257; and *Waggoner* v. *Waggoner*, 111 Va. 325, 68 S. E. 990, each of which was based upon a set of facts differing from those in the case now before us. In *Penn* v. *Guggenheimer, supra*, the testator devised to his son property which belonged to his wife. In *Pence* v. *Life, supra*, the testator devised to his granddaughter property of his wife; and in *Waggoner* v. *Waggoner, supra*, the testator devised property of his wife to third persons.

In this case, the testator did not bequeath or devise any of his intangibles or any property of his widow to any person.

We are of opinion that the trial court erred in holding (1) that, for the purpose of ascertaining the value of the provision made for Mrs. Johnson in the will, testator's net estate should be determined by including in the appraisal of his assets the three Florida bonds in existence at his death and the joint bank deposit of $1,473; (2) that the gross value of testator's estate was $133,356.21; and (3) in putting Mrs. Johnson to her election to hold the said bonds and deposit and release any claim for a portion of her husband's estate, or else surrender the aforesaid bonds and deposit to the executors of the estate, and take the provision made for her in the will. In all other respects, the rulings of the trial court are affirmed; and the cause remanded for such further proceedings as may be necessary, consistent with this opinion.

*Reversed in part; affirmed in part; and remanded.*