## Richmond

DORA FOX STEVENS v. VIVIAN B. SPARKS, EXECUTRIX, ETC., ET AL.

March 9, 1964.

Record No. 5700.

Present, All the Justices.

*Evans B. Jessee* (*Arthur E. Smith*, on brief), for the appellant.

*Charles D. Fox, Jr.* (*Hunter, Fox & Fox*, on brief), for appellee, Vivian B. Sparks, Executrix, &c.

*James E. Buchholtz* (*William J. Lemon*, on brief), for appellees, William L. Martin; William B. Hopkins and William J. Lemon, partners, &c.

SNEAD, J., delivered the opinion of the court.

Vivian B. Sparks, Executrix of the estate of Edward Bascom Stevens, filed a bill in chancery against Dora Fox Stevens, widow of the decedent, and the partnership of Martin, Martin and Hopkins, attorneys at law, hereinafter called law firm, who rendered professional services to Mrs. Stevens in connection with the estate. The bill sought the aid and guidance of the court with regard to the distribution of decedent's estate and it alleged, *inter alia*, that the law firm had served on the executrix notice of attorney's lien for $2,466.51 on funds due Mrs. Stevens from the estate, and that Mrs. Stevens claimed that certain joint bank accounts in the names of decedent and Vivian B. Sparks were assets of the estate. The bill specifically prayed, among other things, that it be determined by the court whether the law firm "has a lien for service and if so, the amount thereof", and whether the joint bank accounts should be considered as a part of decedent's estate.

Mrs. Stevens and the law firm filed separate answers to the bill. Mrs. Stevens moved the court to make Vivian B. Sparks, in her individual capacity, a party defendant to the cause, on the ground that her interests were in conflict with those of the estate. Miss Sparks was made such a party on the day the trial began.

The testimony was heard *ore tenus* and it has been certified to us in narrative form. The evidence consisted of the testimony of Leonard G. Muse, Vivian B. Sparks, William B. Hopkins, William L. Martin, and also certain exhibits. Mrs. Stevens did not testify. The evidence is not in dispute and it may be summarized as follows:

Edward Bascom Stevens was killed in an automobile accident on November 21, 1958. He and Dora Fox Stevens, his wife, had lived separate and apart for more than thirty years. On two occasions he

had sought a divorce, but his wife successfully opposed both attempts. About 1930 Stevens became acquainted with Miss Sparks who was a nurse for a local physician. Shortly thereafter she came to live in his home for the express purpose of caring for Stevens' elderly brothers and sisters who were in poor health. She assisted in their care until the death of the surviving one in 1951. Miss Sparks was advised by Leonard G. Muse, an attorney and old friend of Stevens, "that it would be proper in every respect" for her to continue to reside in the residence with Stevens, which she did until his death.

On October 31, 1941, Stevens executed his last will and testament. He devised and bequeathed all of his property to Miss Sparks and named her as executrix of his estate. On August 16, 1948, he executed a codicil to his will in which he devised all of his interest in 402 Riverland Road, in Roanoke, his residence, to Miss Sparks in fee simple. Later in 1948, the residence was conveyed to her in fee simple by deed.

In 1948 and 1950 Stevens opened three joint bank accounts at the Bank of Salem and First Federal Savings and Loan Association of Roanoke in his name and that of Miss Sparks "as joint tenants with right of survivorship, and not as tenants in common". Two were savings accounts and the other was a checking account. On the day of Stevens' death the total amount on deposit in the three accounts was $28,381.03. Miss Sparks remembered signing only one signature card furnished by the banks. However, her signature on the joint bank account cards is not disputed.

In December 1958, Mrs. Stevens, who resided in Nebraska, employed the law firm of Martin, Martin and Hopkins "to obtain for her whatever monies and benefits might be due to her from the Estate of E. Bascom Stevens, her husband" on a contingent fee basis of one-third. The law firm assisted Mrs. Stevens in securing Social Security benefits without charge; it successfully prosecuted her contested claim for death benefits under the Workmen's Compensation Act, for which the law firm was awarded by the Industrial Commission the sum of $900 for services rendered, and it secured for her benefits of $2,500 on an insurance policy issued by Travelers Protective Association. It received one-third of the latter recovery for services rendered.

Thereafter, the law firm concentrated its efforts towards the estate. Mrs. Stevens renounced her husband's will and elected to claim

such share of the estate as she would be entitled to had her husband died intestate. The net estate at that time, excluding the joint bank accounts in dispute, amounted to approximately $4, 981.38.

Without going into detail, it is sufficient to say that the record shows that much time was consumed and an exhaustive study of the law pertaining to the issues involved was made by members of the law firm. At their instance a number of lengthy conferences were had with Miss Sparks' attorney which culminated in an offer of compromise by Miss Sparks. She agreed to pay Mrs. Stevens (1) $988.17 as full commuted value of the disputed dower interest in the residence which had been conveyed to her in 1948; (2) $1,662.13, being one-third of the net estate, and (3) $4,730.17, being one-sixth of the amounts in the joint bank accounts. These sums total $7,380.47, and the law firm based its claim for compensation on this amount.

The law firm strongly recommended to Mrs. Stevens that she accept the offer which was, in its opinion, more than she would receive by court action. Mrs. Stevens declined to accept the offer since the issue had become a matter of principle with her. She said "that the only way that this matter could be determined would be through a jury trial so that the public could be informed of the type of woman that this Sparks woman was." "To her the monitary (sic) factor was secondary." She told William B. Hopkins, a member of the law firm, "that he would be paid his fee * * * regardless of the outcome of the case". Hopkins informed her that he was of opinion that the issue was one for the chancellor to decide and not one for a jury. He further told Mrs. Stevens that it would be a violation of the canons of professional ethics for him to prosecute the case when the sole purpose was to harass Miss Sparks "without regards to the result in the case." Mrs. Stevens decided to employ other counsel and at that time, according to William L. Martin, another member of the law firm, she "stated unequivocally that the fee would be paid".

The file papers were delivered to her by the law firm and she contacted Harvey Lutins, a Roanoke attorney. He likewise advised Mrs. Stevens to accept the settlement offer, but she refused to follow his advice. She then employed Arthur E. Smith and Evans B. Jesse who represented her at the trial in the court below.

During the course of the trial Leonard G. Muse testified that he had been a friend of Stevens since "sometime in the 1920's"; that he had on several occasions discussed with him the disposition of his estate; that on one occasion Stevens told him he had substantial sums

of money on savings and he wanted Miss Sparks to have these accounts; that several years before his death Stevens told him "of his desire that his entire estate should go to Miss Sparks because of her service to himself and his family." Muse further testified that Stevens informed him on another occasion that his will had been drawn leaving everything to Miss Sparks; "that he also had savings and checking accounts which he had placed jointly in his and Miss Sparks' name; that the money placed in the accounts was earned by him and that he had made the accounts jointly so as to be certain that she was joint owner with him of the accounts and that he did not want his wife to get one cent of anything he possessed, but on the contrary Miss Sparks was to have it all."

Muse also stated that he had known Miss Sparks for a number of years and she was a person of "good reputation in every respect". He was certain that her relationship with Stevens "was one of complete propriety."

In his letter opinion, the chancellor held, among other things, that the firm of Martin, Martin and Hopkins, attorneys, had a common law lien in the sum of $2,466.51 on the funds due Mrs. Stevens from decedent's estate and the firm was entitled to a judgment against Mrs. Stevens for that amount; that the presumption that the bank accounts were placed in the names of Stevens and Miss Sparks, as a matter of convenience, was conclusively rebutted by the evidence adduced; that Stevens' intent in making the deposits was "established beyond question"; that decedent's estate had no claim or interest in the accounts, and that the accounts passed to Miss Sparks according to contract. The decree appealed from included the conclusions reached.

The crucial questions raised by the assignments of error are whether the chancellor erred (1) in ruling that the law firm had a common law lien on funds due Mrs. Stevens from the estate; (2) in granting the law firm a personal judgment against Mrs. Stevens; and (3) in ruling that the estate of Stevens had no claim or interest in the three joint bank accounts. These questions will be considered in the order mentioned.

Mrs. Stevens argues that aside from the question of a lien the law firm was not entitled to the contingent fee agreed upon because she did not accept the proposed settlement. She says she wanted the court and jury to determine the case.

The bill prayed that the court decide whether the law firm had a lien for services rendered Mrs. Stevens, and if so the amount thereof. The law firm's answer set out the grounds on which its claim was

based and asked the court to determine whether the law firm was entitled to compensation for services rendered; the amount thereof, if any, and to direct that the amount determined be considered as a lien against Mrs. Stevens' share of the estate. Mrs. Stevens' answer merely denied that the law firm was entitled to a lien for any sum. Thus, the issue of compensation was squarely before the court. The evidence conclusively shows that Mrs. Stevens promised to pay the fee regardless of the outcome of the case. At the time the relationship of attorney and client came to an end, Mrs. Stevens "stated unequivocally that the fee was to be paid". There was sufficient evidence for the chancellor to determine that the sum sought, $2,466.51, was due from Mrs. Stevens to the law firm for its fee and advancements made.

In the court below, the law firm claimed a lien for attorneys fees under § 54-70, Code 1950, which provides an attorney, contracting to prosecute a contract or tort claim, a lien as security for his fee for services. Clearly, the statute is not applicable to the case at bar as neither class of claim is here involved. The chancellor held the lien was "based on a common law lien for attorney's fees".

In oral argument before us counsel for the law firm conceded that no lien existed under any theory and we do not think he could have taken a contrary position under the facts of this case. An attorney may have a common law possessory lien which is his right to retain the property or money belonging to his client until his fees are paid. Such a lien depends upon possession and if he voluntarily parts with possession the lien ceases. 2 M. J., Attorney and Client, § 51, p. 419. Here, the law firm did not have possession of the funds due Mrs. Stevens. Hence no such lien existed. We find that the chancellor erred in holding that the law firm had a lien on the funds due Mrs. Stevens from decedent's estate.

Mrs. Stevens next contends that the court erred in entering judgment against her because, she says, she was deprived of her right to have the law firm's claim determined by a jury.

Usually, when a court of equity has acquired jurisdiction of a cause it will retain it for all purposes and administer full relief. It may enforce, if necessary, legal rights and apply legal remedies to accomplish that end and where equity takes jurisdiction for one purpose it will determine all questions arising in the cause. *White v. White*, 181 Va. 162, 169, 24 S. E. 2d 448; *Sanford v. Sims*, 192 Va. 644, 649, 66 S. E. 2d 495; 7 M. J., Equity, § 6, p. 11.

As has been stated, the question of compensation due the law firm by Mrs. Stevens was raised in the pleadings. In her answer, Mrs. Stevens did not deny owing the amount claimed, but merely stated the law firm was not entitled to a lien for any sum. She offered no objection to the determination of this issue and did not request a jury trial. The court had jurisdiction of the subject matter, and Mrs. Stevens voluntarily submitted herself to the jurisdiction of the court. Under these circumstances it was not error for the court to enter judgment against Mrs. Stevens.

Finally, it is contended that the court erred in ruling that the estate of Stevens had no claim or interest in the three joint bank accounts.

Mrs. Stevens argues that in order for Miss Sparks to prevail it must be shown that there was a gift *inter vivos* of the funds in question. She maintains that the evidence falls short of establishing such a gift, because there was no delivery of possession of the money at the time of the gift or an acceptance of it by the donee, and because the donor did not divest himself of all dominion and control over the money.

On the other hand, Miss Sparks does not claim that the ownership of the funds passed to her by a gift *inter vivos*. She claims ownership of the funds by virtue of the contracts entered into by Stevens, herself and the banks, coupled with the intent of Stevens.

The principles of law enumerated in *King, Ex'x* v. *Merryman, Adm'x,* 196 Va. 844, 86 S. E. 2d 141 are applicable to the case at bar. In that case the joint bank account was in the names of A. V. Dodson and Lottie King, his daughter, " 'subject to the check of either of us or the survivor.' " We said:

"In the absence of a statutory provision establishing the rights of the depositors between themselves, it is generally held that questions presented as to the ownership of the fund must be determined in the light of common law principles under the circumstances attending the deposit. In that determination, the intention of the depositor is a primary and controlling factor. [Citing authorities. 196 Va. at p. 851.]

\* \* \* \* \*

" 'Where the deposit by a person is in the name of himself and another, not his wife, the presumption is that it was done for the purposes of convenience only, and this presumption is strengthened by the illness or infirmity of the depositor.' [196 Va. at p. 856.]

\* \* \* \* \*

"It seems to be well settled that a bank account may be so fixed that two persons shall be joint owners thereof during their lives, and the survivor take on the death of the other. This may depend upon the terms of the deposit, that is the contract made with the bank, or upon the intention of the depositors as disclosed by their declarations, oral or written. [196 Va. at p. 858.]

\* \* \* \* \*

"\* \* \* In the absence of such statutory presumptions, we adhere to the rule that when a person deposits his money in bank to the credit of himself and another, payable to the order of either, or the survivor of them, the rights and interests of the depositors as between themselves are dependent upon the question whether the owner of the money intended to make a gift to the other, or whether the account was entered in joint form in accordance with a contract or for other purposes." 196 Va. at p. 859.

To the same effect see *Wrenn* v. *Daniels,* 200 Va. 419, 426, 106 S. E. 2d 126; *Quesenberry* v. *Funk,* 203 Va. 619, 621, 622, 125 S. E. 2d 869.

Here, the contracts between Stevens, Miss Sparks and the banks clearly state that the survivor shall be entitled to the funds on deposit in the joint accounts. But form alone is not sufficient, because the presumption is that the joint accounts were made for the purposes of convenience only. However, "the intention of the depositor is the primary and controlling factor." From the evidence, the chancellor determined that the presumption that the joint accounts were established for convenience was conclusively rebutted, and it was "established beyond question" that Stevens' intent in making the deposits was that Miss Sparks should at his death become the sole owner of funds on deposit "according to contract".

We fully agree with the conclusions reached by the chancellor. The evidence decisively shows that the joint accounts were not established for Stevens' convenience, and that it was his desire and intention for Miss Sparks to have sole ownership of the funds on deposit at his death as provided for in the contracts. Thus, the funds in question passed to Miss Sparks by virtue of the contracts. The chancellor correctly held that the estate of Stevens had no claim or interest in the three joint bank accounts.

The decree appealed from is modified to adjudicate that the law firm has no lien on the funds due Mrs. Stevens by decedent's estate. In all other respects the decree is affirmed.

*Modified and affirmed.*