## Richmond

JAMES T. COLLEY v. IRIS BURGESS COX, IN HER OWN RIGHT
AND AS EXECUTRIX, ETC., ET AL.

April 28, 1969.

Record No. 6901.

Present, All the Justices.

*Willard R. Finney* for appellant.

*F. Rodney Fitzpatrick* for appellees.

HARRISON, J., delivered the opinion of the court.

Iris Burgess Cox, executrix and legatee under the will of Pearl Tate Colley, filed her bill of complaint against Dr. James T. Colley and others, seeking the advice and guidance of the court in the settlement of the decedent's estate. She alleged, among other things, that the estate consisted, in part, of a $10,000 savings account in Colonial-American National Bank, Roanoke, Virginia, in the name of Pearl Tate Colley or James T. Colley. Dr. Colley answered, claiming ownership of the joint account. The cause was referred to a commis-

sioner in chancery who ruled that the savings account belonged to the estate. Dr. Colley excepted and the report was confirmed. A final decree was entered directing payment to the estate of the funds in said account, and Dr. Colley was granted an appeal.

In contrast to other cases we have considered involving survivorship accounts, the facts here are not in serious controversy. Mrs. Colley died on January 16, 1965, and her will disposed of an estate consisting of real and personal property valued at approximately $30,000. She named her friend, Mrs. Cox, as executrix and bequeathed her the sum of $500. Various other bequests were made, including one in the amount of $1000 to Dr. Colley, who was also named in the residuary clause.

The decedent lived in the City of Roanoke and was estranged from her husband. She was survived by a son, Dr. Colley, of Rocky Mount, Virginia, and one daughter who resides out of the state. The sole bequest to this daughter was a bedroom suite of furniture, and she filed no response to the bill of complaint.

Following a heart attack, and on or about August 26, 1962, the decedent decided to add the name of her son, Dr. Colley, on the $10,000 savings account. She attended to the transaction personally. Mrs. Alice F. Jones, who was then employed by the bank, testified that Mrs. Colley came into the bank and stated that "[s]he just wanted her son's name on the account, and that's what I did for her". Mrs. Jones stated that she did not go into details with Mrs. Colley about the account but that she "gathered from her it was for him (meaning Dr. Colley). Because she did not make it for convenience. She never used that account at all except to draw the interest, . . .".

Sidney Elmore, Jr. had known Mrs. Colley for about 16 years prior to her death, and performed odd jobs for the decedent, such as purchasing groceries, paying bills, and depositing money in the bank. He stated that after Mrs. Colley had her bad heart attack, she mentioned to him "that she ought to have her account at the Colonial-American Bank changed to James' name on it so that he would be able to get the money out of the bank". This witness, when asked if she said under what circumstances would he be able to get it, responded, "No, she told me that she was putting it in his name so that he could have the money. That's exactly what she said." Elmore further testified that the decedent told him "that she was going to notify Miss Jones at the bank to mail her out a card so that she could have it set up in a joint account so that James, Dr. Colley, could get the money."

Mrs. Cox testified that on several occasions after Dr. Colley's name was added, Mrs. Colley told her that she was sick and that she wanted to have her card changed at the bank; that she did not tell her how she wanted to have it fixed or anything, other than that she said she wanted to make other arrangements; and that she did not want his name on there.

The only other witness was Dr. Colley. He testified that he signed the joint savings account; that he did not look after any business for his mother and did not write any checks or pay any of her bills, other than her drug bill. Dr. Colley was not consulted by Mrs. Colley regarding the setting up of the joint account. He stated that to some extent he and his mother were estranged for the last year of her life.

Introduced in evidence was the savings account which is the subject of this controversy. The pertinent part is as follows:

"SAVINGS
"JOINT ACCOUNT
"PEARL TATE COLLEY OR J. T. COLLEY

"COLONIAL-AMERICAN NATIONAL BANK, Roanoke, Va. is hereby authorized to recognize either of the signatures below in the payment of funds or the transaction of any other business. Either one or both or the survivor to sign. The signature of either one to be sufficient for withdrawal of all, or any part of the funds standing to the credit of the above account."

The account card was signed by Mrs. Colley and Dr. Colley, and the passbook remained in the possession of decedent.

As was observed by Mr. Justice Carrico in *Wilkinson* v. *Witherspoon*, 206 Va. 297, 301, 142 S. E. 2d 478, 480 (1965), "[t]he issue here presented is not new to this court nor to the courts throughout the country." There, and in *King* v. *Merryman*, 196 Va. 844, 86 S. E. 2d 141 (1955), will be found an exhaustive analysis of cases, text and statutory authority upon the subject. Among the cases in point and discussed are: *Deal's Administrator* v. *Merchants & Mechanic's Savings Bank, et al.*, 120 Va. 297, 91 S. E. 135 (1917); *Wrenn* v. *Daniels*, 200 Va. 419, 106 S. E. 2d 126 (1958); *Quesenberry* v. *Funk*, 203 Va. 619, 125 S. E. 2d 869 (1962); *Stevens* v. *Sparks*, 205 Va. 128, 135 S. E. 2d 140 (1964). See also *Haynes* v. *Hurt*, 209 Va. 447, 164 S. E. 2d 671 (1968).

Counsel for Dr. Colley argues that the savings account card has

sufficient language used therein, including the signatures, to show that the intention of Mrs. Colley at the time of this deposit was to set up a survivorship account, and that she intended that the survivor should be the owner at her death. He further contends that proof that survivorship was intended was established by oral testimony, and that such evidence conclusively rebutted any presumption that the account was established for convenience.

Admittedly the testimony relied upon by appellant would be persuasive were it necessary for him to rebut the presumption that the joint account was created for the convenience of Mrs. Colley. However, under the facts in this case the presumption never comes into play.

The rights of the parties here must be determined by rules pertaining to the interpretation of contracts. We must search for and then give effect to the intention of the parties. It is for this reason that the provisions of the signature card become significant. The card constitutes the contract between the depositor of money, and the bank in which it is deposited, and it controls the terms and disposition of the account.

Relevant to our decision are the provisions of Code § 55-20 which abolish survivorship as between joint tenants, and Code § 55-21 which provides that § 55-20 shall not apply "to an estate conveyed or devised to persons in their own right when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others". The provisions of Code § 55-21 were held to apply to bank accounts in *Johnson* v. *McCarty*, 202 Va. 49, 56, 115 S. E. 2d 915, 920 (1960).

An examination of the provisions of the savings account under review discloses it to be a "joint account of Pearl Tate Colley or Dr. Colley". The parties authorized the bank to permit either one or both or the survivor to withdraw all or any part of the funds therein. Obviously, the language was designed to provide the bank with the protection afforded it by Code § 6.1-72. Under this section, when a deposit is made in any bank under the names of two or more persons, payable to either, or to the survivor, such deposit may be paid to any such person whether the others be living or not, and the receipt of the person so paid constitutes a complete release and discharge of the bank for any payment made. In *King* v. *Merryman, supra*, referring to this statute, the court said:

"It establishes no presumption as to the ownership of the money as between two persons named in a joint savings account, with or without an extended right of survivorship. It is manifestly for the protection of the bank and not declaratory of the rights of the depositors in the fund as between themselves. Each depositor is merely given the right to receive payment out of the funds from the bank during his lifetime, and the survivor the right after the death of the other person. The bank is discharged from liability for any payment so made." 196 Va. 844, 850, 851, 86 S. E. 2d 141, 144.

For the joint account here to be held a survivorship account it must *manifestly appear from the tenor of the instrument that it was intended the part of Mrs. Colley, the party dying, should then belong to Dr. Colley, the survivor.*

Mrs. Jones testified regarding three types of accounts that one could have at the bank, and described them as an individual, a power of attorney and a joint savings with survivorship. From her evidence it appears she regarded the joint account of Mrs. Colley or Dr. Colley as a joint account with survivorship. Without doubt, the parties and the bank could have, by appropriate language, created it as a joint account and provided that upon the death of either the survivor would become the sole owner thereof. But this was not done, and we cannot read into the language of the instrument such a manifest intention.

Our decision here is controlled by *King v. Merryman, supra.* There the bank was authorized to change a savings account which then stood in the name of A. V. Dodson to a joint account of A. V. Dodson and Mrs. Lottie King (his daughter) and "subject to the check of either of us or the survivor". Referring to the form of the deposit, this court said:

"The deposit on May 24, 1949, in accordance with instructions of the deceased, was made in statutory form. It expressly authorized the bank to credit the funds to the joint account of himself and daughter, and that it be made 'subject to the check of either of us or the survivor.' That is all the deceased requested of the bank. His written instruction merely directed that either of the depositors or the survivor should be allowed to withdraw funds in the account. It does not contain language from which a presumption of an intention to create a joint tenancy, with the inci-

dent right of survivorship, might flow. It does not contain any language showing that it was his intention or understanding that his daughter should take title to the fund or any portion thereof at his death." 196 Va. 844, 849, 850, 86 S. E. 2d 141, 144.

In *Quesenberry* v. *Funk, supra,* the deposit was in the name of a father and his daughter "jointly, with right of survivorship". We held the account to be the property of the father's estate for the testimony showed the account was opened by him as a matter of convenience.

In *Stevens* v. *Sparks, supra,* the account was opened in the name of a patient and his nurse "as joint tenants with right of survivorship and not as tenants in common". There the evidence showed a manifest intention on the part of the deceased patient that the surviving nurse have the sole ownership at his death, and we so held.

In *Wrenn* v. *Daniels, supra,* bank deposits and certificates of stock were in the name of a father and his son "as joint tenants with right of survivorship and not as tenants in common". We held the evidence as conclusively proving that the accounts and stock certificates were placed in joint names by the father for his convenience.

In *Wilkinson* v. *Witherspoon, supra,* the deposit was in the name of an uncle and his niece "as joint tenants with right of survivorship and not as tenants in common and as tenants by the entirety". In addition, the signature card was fully descriptive of the rights of the parties, and provided that "it is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by any one of the parties *is and shall be conclusively intended to be a gift and delivery* at that time of such funds to the other signature party or parties to the extent of his or their pro rata interest in the account." We held that the circumstances, including particularly the provisions of the signature card, showed the uncle's intent that the funds pass to his niece rather than as a part of his estate.

In *Deal's Administrator* v. *Merchants & Mechanic's Savings Bank, et al., supra,* it was found as a fact that the joint deposit was made with an express understanding with the bank that the balance thereof, not checked out during the joint lives of the two depositors, was to become the property of the survivor. We held, under the facts of that case, that the effect of the deposit was to create a contract relation between the bank and the two joint depositors under which

the amount to the credit of the account became the property of the claimant as a survivor of the decedent and herself.

In *Haynes* v. *Hurt, supra,* the presumption of deposit for convenience was held inapplicable where two persons deposit their funds in a joint bank account.

Where there is a clear expression of an intention that the survivor should become the owner of the account upon the death of the depositor, we have upheld that intention. Where such an intention is not fully disclosed by the terms of the deposit, but clearly appears when the terms of the deposit are considered along with other evidence, the intention has been upheld. Where a contrary intention has been shown to exist, the court has excluded the alleged rights of the survivor. However, in every case, with the possible exception of *Deal,* the tenor of the language of the deposit has been consistent with and indicated the creation of an account that would be payable to and become the account of the survivor.

The language in the instant case does not indicate a survivorship account, or indicate anything other than a joint account from which either person named could make withdrawals and from which, if a survivor withdrew funds, the bank would be protected.

It should be observed that Dr. Colley neither solicited nor encouraged the joint deposit by his mother, and, in fact, had no knowledge of her intention until he was requested to sign the signature card. So far as the record discloses he had no further conversations with his mother regarding the account, and did not know its status, or the amount therein, until after her death.

Despite the belief of Mrs. Jones that Mrs. Colley was creating "a survivorship account", she admitted that Mrs. Colley did not actually discuss with her what a joint account was. Nothing was said between the two as to "what would happen on a survivorship account".

It, therefore, is clear that all Mrs. Colley requested of the bank was a joint account, irrespective of any intention that she might have previously entertained or expressed to Sidney Elmore, Jr. The account that she created does not contain language from which a presumption of an intention to create a joint tenancy with the incident right of survivorship, might flow. The signature card does not contain any language showing that it was her intention or understanding that her son should take title to the fund or any portion thereof at her death.

In the absence of such intention, manifestly appearing, either from the tenor of the instructions given to the bank at the time the deposit

was made, or in the form of the deposit, no survivorship account was created.

Appellant further contends that it was error to permit the executrix of Mrs. Colley's estate to bring this suit asserting a claim to the joint bank account for the reason that no one in interest requested that she do so. He relies on Code § 64.1-140 which provides, in part, that personal representatives "shall be under no obligation unless requested in writing by someone in interest to assert a claim on behalf of their decedent's estate to any funds . . . on deposit . . . when the terms of the contract of deposit . . . permit such bank . . . to pay . . . to a named survivor."

This section of the Code is designed to protect banks and personal representatives. It does not prohibit the filing of claims on such bank account. It does protect a personal representative who elects not to file. Furthermore, the instant case was brought by Mrs. Cox in her own right as a legatee under Mrs. Colley's will, as well as in her capacity as the personal representative of the estate.

Accordingly we approve the action of the trial court in confirming the report of the commisioner in chancery, and in decreeing that the joint account is the property of the estate of Pearl Tate Colley. Its decree is therefore

*Affirmed.*