## CIRCUIT COURT OF THE CITY OF WINCHESTER

In re Accounts of
Herbert T. McGolerick,
Executor of the Estate of
Joseph T. McGolerick,
Deceased

January 8, 1981

Case No. (Estate) 4126

By Judge Henry H. Whiting

This case was heard on exceptions to the executor's settlement of accounts. Evidence was taken *ore tenus* before the Court but without a court reporter. Because of this, the court has set forth an extensive statement of the evidence, should either party desire to appeal adverse rulings.

Joseph McGolerick, the father of Herbert McGolerick, his two brothers and two sisters and the husband of Esty N. McGolerick, by his will dated January 20, 1955, left everything to his wife, appointing her and Herbert McGolerick (hereinafter Herbert) executors of his will and providing that if Esty McGolerick predeceased him the estate would be divided equally among his five children. The will was not made an exhibit in the case, and the Court does now do so, marking a photocopy of the will as Court Exhibit "A." In September of 1976, a certificate of deposit for $10,500.00 was purchased with the funds of Joseph McGolerick making him, his wife, and Herbert "joint tenants with right of survivorship." Esty McGolerick died December 24, 1977, and Joseph McGolerick died in April of 1979, all five children having survived their parents.

Herbert paid $1,500.00 to his son, David McGolerick, from estate funds allegedly for unpaid rental due by Joseph McGolerick to the grandson.

The estate of Joseph McGolerick totaled $69,500.00 at the time of his death, and the evidence indicated it was approximately the same size in September of 1976.

## Statement of Issues

(1) Did Herbert as executor improperly exclude the survivorship certificate of deposit from his final settlement in the sum of $10,500.00 purchased with the father's funds in September of 1976?

(2) Did Herbert wrongfully credit himself with $1,500.00 rent on premises occupied by Joseph and Esty McGolerick at the rate of $150.00 a month allegedly accruing to Herbert's son during a major part of the period from September of 1976 until April of 1979, the date of Joseph McGolerick's death, although paid by Herbert to his son after Joseph McGolerick died?

## Statement of Evidence

Herbert, one of several adult children of Joseph T. McGolerick and Esty McGolerick, aged eighty-two and eighty-nine respectively, testified [as follows].

On September 6, 1976, seven or eight days after they had been moved by him from their home in Brunswick, Maryland, to Winchester, Virginia, he had a discussion, apparently in his father's presence, with his mother as to the "investment" of $10,500.00 admitted by Herbert to have been saved from a pension his father had received as a retired railroad man and kept in cash in a jar. The mother said she wanted the cash put in a bank.

During that conversation, he explained to his deaf father in a written note which he did not keep that he had his own savings set up with his son as a survivorship account so that his son would have it when Herbert died.

Herbert was told by his father on the following day to purchase a certificate of deposit in the name of the parents and Herbert as a survivorship account.

On the day following, Herbert's father simply told him to take his mother to the bank, and he took his mother to the Farmers & Merchants National Bank in Winchester, where Betty Carroll, a Vice President of that bank, opened the account and "fully explained" the survivorship features to his mother while he was present.

Herbert denied helping the mother to sign the certificate of deposit, although she was blind.

Although his mother was blind, had heart trouble, and her mind was cloudy sometimes, she was not senile and was "pretty good" mentally most of the time.

His father was deaf and had kidney trouble but was lucid up to the time of his death. For some unexplained reason, his father was unable to go to the bank on the day of the deposit. Herbert received a power of attorney from the father on September 13, 1976, five days after the certificate of deposit was purchased.

Although Herbert was a friend of Ruby Trenary, he had no romantic interest in her nor had he engaged in sex with her.

He listed the certificate of deposit as an asset of his father's estate in the initial inventory.

Betty Carroll, a Vice President of the Farmers & Merchants National Bank, where the certificate of deposit was purchased, Plaintiff's Exhibit No. 1, testified on January 18, 1980, [as follows].

"WRS" thereon meant a deposit with right of survivorship and was the customary way of showing survivorship. She had sold over a thousand certificates of deposit in 1976 and could not remember the specific incident and "assumed the depositors knew what. WRS meant." She said if she had been asked at the time of purchase, she would have explained that anyone could cash a certificate and on death it would belong to the survivor. She had never waited on Mrs. Esty McGolerick before and had a strong feeling she did make a full explanation because she usually did that the first time she waited on a customer.

She removed the names of the parents from the certificate at Herbert's request after the parents died.

Ruby Trenary testified [as follows].

She was a widow and a licensed practical nurse who had known Herbert since 1942 and moved back to Winchester some time before 1976. Herbert had helped her in the renovation of several of her own rental properties, and she had been occupying Herbert's son's house, furnishing it with her furniture, for some months prior to September of 1976 without payment of rent but in exchange for her help in remodeling that house and helping periodically in the care of Herbert's parents over in Brunswick, Maryland.

She had taken a number of vacation trips with Herbert, engaging in sex during those trips.

Joseph McGolerick had been discharged as a patient from a Frederick, Maryland, hospital in late August of 1976 and required nursing care upon his return to his Brunswick, Maryland, home. It was decided that the senior McGolericks would join her in David McGolerick's home, bringing only the furniture for their bedroom. She was to act as

their nurse and receive $50.00 per week for her services, and they were to pay David McGolerick $150.00 each month as rent.

She was present at a conference at the house Herbert's son owned and the parents occupied in Winchester when Herbert was asked about investment advice regarding the $10,500.00 by both parents. Herbert explained how his own certificates of deposit were titled so as to give his son the right to the certificates should he die, and the father indicated this was "OK" but he "wanted time to think it over." The next day, the father said he had decided to invest this money in the Farmers & Merchants National Bank, and Herbert took the mother down the following day, and she heard no further comment about the certificate of deposit.

Woodrow McGolerick, another son of Joseph and Esty, testified [as follows].

His mother said the father's money had been invested in the Brunswick, Maryland, bank up until 1976. He never saw or heard of any sums of cash kept by the parents on his frequent visits to them in Brunswick. Both his parents were too feeble and ill to go to the bank to get the money.

The arrangement about the parents moving from their home in Brunswick to Winchester was necessary because his sister, who had previously cared for his parents, had to return to Colorado in August of 1976. He testified that all of the five children had close and friendly relations with the parents and helped them from time to time as they could.

David McGolerick testified [as follows]. His father managed the home in question for him, collecting the money, paying the bills, and making an accounting after each year was over.

He was present when his father told his parents of the rental arrangement, writing it out for the grandfather's benefit, since he was deaf. His grandfather agreed to pay $150.00 rental per month as a part of the arrangement for their nursing care and occupancy of a part of his house.

No rent was paid until November of 1978, at which time several months rent was paid by Herbert as attorney in fact, but it was not paid in full up to that time.

Some time after both parents had died, Herbert, as executor, paid the balance due of $1,500.00 for the last ten months' rental of parents' occupancy.

### Ownership of Certificate of Deposit

The issue before the court with regard to the certificate of deposit was whether Joseph McGolerick intended to make a gift of it to Herbert at the time it was purchased with survivorship language. This opinion is yet another effort to deal with the thorny problem introduced in Virginia in *Deal, infra.*

In determining this issue of fact, *King v. Merryman,* 196 Va. 844 (1955), teaches us that there is no presumption that survivorship was intended by Joseph McGolerick by the language recited in this case; indeed, the presumption is that the deposit was for convenience only where the parties were not husband and wife, 196 Va. at 856–858. In this case, where the certificate of deposit itself does not contain clear and explicit language which shows the depositor's intention to vest title in the survivor as a matter of contract law (perhaps eliminating the need for parol evidence as to what was intended and other requirement of gifts *inter vivos,* as in *Wilkinson v. Witherspoon,* 206 Va. 297, 304-305 (1965)), the question of Joseph McGolerick's intent in having the deposit made "WRS" becomes an issue of fact to be resolved by parol evidence and examination of the surrounding circumstances to see whether the donee survivor has overcome the *Merryman*-imposed presumption that the deposit was for the convenience only of the owner.

Since Esty McGolerick was also a donee beneficiary, the Court does not believe inquiry need be made as to her intent.

Joseph McGolerick, like Americus V. Dodson in *Merryman,* was over eighty years of age, enfeebled, requiring the help of his several adult children from time to time. The deposit was made at a time when Joseph McGolerick had only recently been released from the hospital, recently removed from his own residence and community, deaf and suffering the infirmities of age, and, as *Merryman* points out, the presumption of a deposit for his convenience is thus strengthened by those circumstances, 196 Va. at 856; see also the quote from *Merryman* in *Witherspoon,* 206 Va. at 302.

In the Court's opinion, the parol evidence in this case falls short of showing an intention in Joseph McGolerick to create rights of survivorship in Herbert. Herbert has cited *Stevens,* 205 Va. 128 (1964), where the depositor, an educated man who had made a number of other gifts over the years to his secretary, the surviving tenant, clearly and unequivocally declared his intention to Leonard Muse, an apparently disinterested attorney, to vest this money in her so that "his [estranged]

wife would not get one cent of anything he possessed," 205 Va. at 132, and had left everything to the secretary by his will. Here this will be a distribution of almost fifteen percent of the gross estate in apparently the only instance in which this ill, deaf, elderly man was alleged to have intended to favor one child over the others in the closing days of his life in derogation of his will dividing his estate equally among the children. The evidence shows without contradiction that all the children were on good terms with the parents. While Herbert's evidence does show commendable acts of concern and kindness to his parents, the other children were admitted to have done what they could, too, some not being able to do as much or as frequently as others because of their living too far away.

*Wilkinson*, 206 Va. 297 (1965), does not help Herbert either in this situation. It turned on the express language of the deposit certificate, virtually foreclosing collateral evidence of mere convenience, 206 Va. at 305. While the Supreme Court did refer to collateral parol evidence in *Wilkinson*, such evidence may no longer be admissible in the light of the holdings in the subsequently decided cases of *Campbell v. Campbell*, 211 Va. 31 (1970), and *Robbins v. Grimes*, 211 Va. 97 (1970). The Court reads those last two opinions as eliminating the necessity of a discussion of collateral parol evidence as to what the depositor intended where the deposit contract contained language of agreement by the signatory parties with each other and with the bank that "any funds placed in or added to the account by any one of the parties are and shall be conclusively intended to be a gift and delivery at that time." This was also the language of the deposit contract in *Wilkinson*.

The early 1917 case of *Deal's Adm'r v. Merchants, etc., Bank*, 120 Va. 297 (1917), in which the survivor got the gift, does appear to be somewhat out of line with subsequent decisions in that the deposit in *Deal* apparently did not contain any stronger language than *Colley*, 209 Va. 811 (1969), and the *Deal* holding would thus appear to be somewhat inconsistent with *Colley*, though not expressly overruled or criticized therein, 209 Va. at 816 (1969). *Deal* was said in *Merryman* to be a holding "based on the peculiar facts of that case," 196 Va. 857. However, we are not concerned with reconciling the language of the deposit in *Deal* as distinguished from *Colley*, since the deposit in this case does create a factual question as to what the depositor might have intended by the equivocal language of the deposit contract "WRS." *Deal* is appropriate here only because the *Deal* depositor had a friend

who made the deposit after being expressly told by the depositor she wanted the money to go to the survivor when the depositor died. In this case, the only evidence of explanation to Joseph McGolerick as to the effect of such a deposit comes from (i) an interested party, Herbert McGolerick, and (ii) Mrs. Trenary, who is shown to have been more than just a friend. The Court is in some doubt as to whether Herbert made the explanation claimed. He says he wrote it out for his father, but Mrs. Trenary did not mention that. He did not produce his note, although he could easily have destroyed it as no longer important since he was a layman and would not have appreciated the requirement of corroboration. Also significant is Herbert's listing of the certificate of deposit as an asset of the estate in his initial inventory. (Woodrow McGolerick Exhibit 1.)

Furthermore, neither Herbert nor Mrs. Trenary said the alleged explanation to this deaf old man was any more than an answer to his inquiry for "investment advice," limited to Herbert's explanation that he kept the account that way in his personal situation so that his son could receive the money when he died. Herbert did not say he told them that he would receive this money for himself; the Court believes these old people may well have assumed it was merely a convenience to him in administering the estate as their executor. That assumption is reinforced by the fact that no other evidence was introduced as to what these older people intended. If they intended to favor Herbert in such a manner, it seems logical that some explanation would have been made by one of them to the other children.

The Court does not believe the explanation of Betty Carroll to the mother was sufficient to bind the father, who was the owner of the funds deposited. However, should it have been necessary for the Court to have decided this issue, the Court does not believe Mrs. Carroll's testimony that she "had a strong feeling" she would have made a full explanation to an initial depositor of the incidence of a survivorship account was sufficient to establish that Esty McGolerick really understood she was either making a gift or creating a contractual right in favor of Herbert and to prefer him to his brothers and sisters in the deposit of such substantial an amount of her estate.

The Court does not believe sufficient evidence has been adduced to show that this old, ill, and deaf man in the waning years of his life intended to make such a gift of such a substantial part of his estate to

one child in preference to the others or to overcome the presumption of convenience by such a deposit.

### Rental Claim

The second issue before the Court is the matter of the $1,500.00 rental charged. Counsel for Herbert argue that the burden is upon those attacking the charge in the exception to the report, citing no cases in support of the proposition. The Court opines that there should be no burden in these particular circumstances where the executor has dealt with his son with estate funds based on a contract he at least "engineered" if not made while in a position of trust with his father.

The Court is satisfied that Herbert McGolerick has established his right to recover that amount. Both he and his son, as well as Ruby Trenary, testified as to the rental agreement. There was no conflict in the evidence as to the fact that the parents did occupy the house, the house was fairly worth the sum of $150.00 a month, and the actual claimant was the grandson.

The question is as to whether the claim has been sufficiently corroborated.

While both David T. McGolerick and possibly Herbert McGolerick might be considered as interested parties and thus disqualified as corroborating witnesses, Ruby Trenary was not.

In the Court's opinion, *Ratliff v. Jewell*, 153 Va. 315 (1929), is distinguishable. There the wife did have a pecuniary interest, disqualifying her as a corroborating witness because if the husband's counterclaim was not established, the wife would have to pay the note in litigation which she and her husband had signed. It is true *Jewell* distinguished between adverse and interested parties and extended the requirement of corroboration to an "interested party" in that case, but the Court did not intend to extend "interested party" status to a friend, even one as close as Mrs. Trenary was to Herbert McGolerick. Even if Herbert McGolerick was the one who was making the claim or was in fact an adverse party because he was the executor who might be surcharged if the rental payment was improper, the Court does not believe that Mrs. Trenary's relationship made her an "interested party" as the wife was in the *Ratliff* case.

Furthermore, there was no showing that Mrs. Trenary had any special relationship to David McGolerick, who was the actual claimant, and there was ample other corroboration of an agreement to pay for the

reasonable value of the David McGolerick house because of their long-continued occupancy of the premises and the fact that he had no direct duty to support the grandparents.

Based on the foregoing, the Court will enter a Decree finding that the certificate of deposit was a part of the estate but will decree that the rental payment was proper and should be credited to the executor in his settlement of accounts.